**AD WEST MARKETING, INC., a Missouri Corporation, et al., Plaintiffs-Appellants,**

**v.**

**Ronald HAYES and Becky B. Hayes, Defendants-Appellees.**

**No. 83–2258.**

United States Court of Appeals, Fifth Circuit.

Nov. 5, 1984.

Intini & Associates, Chicago, Ill., Steven H. Swander, Fort Worth, Tex., for plaintiffs-appellants.

Billy D. Hullum, Wills Point, Tex., for Hayes.

Before BROWN, TATE, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Plaintiff Ad West Marketing, Inc. and cross defendants Donald and Karen Kress, and Ad Quest, Inc. appeal from the orders granting a default judgment [1] against them and denying their motions to vacate the default judgment and reinstate their cause of action against Ronald and Becky Hayes.[2] This diversity case grows out of the formation of a corporation in April 1980 by the Hayeses and Kresses to manufacture and market a product known as the "little duffel." Initially, the Hayeses had established the business in 1978, but to secure additional working capital they joined forces with the Kresses. The Hayeses are Texas residents. The Kresses live in Missouri. The product was to be manufactured in Texas and marketed from Missouri. The agreement to form the corporation was made in Texas. From that agreement, Ad West Marketing, Inc., was incorporated as a Missouri corporation with each family owning one-half of the stock. While in Texas, the Kresses helped promote the product at a Dallas trade show. Thereafter, daily contact was kept between the Texas plant and the Missouri office as orders and shipping information were exchanged.

In October 1980 there was a falling out with Kress accusing Hayes of diverting business from Ad West. Kress, from Missouri, had the company's Texas phone disconnected and had all telephone calls directed to Missouri. He also refused to issue payroll checks to the Texas workers. However, new orders continued to be taken in Missouri for the same product under the name Ad Quest.

On November 21, 1980, Ad West sued Ronald and Becky Hayes. The Hayeses answered and filed a cross action against the Kresses. Since the chronology of events is crucial to reaching a correct decision, those dates and the parties' moves will be set out with some detail.

■ The record reveals that this case was initially set in November of 1982 for

---

1. The motion for a default judgment was filed on February 15, 1983; it was granted on March 10, 1983, signed on April 4, 1983; and entered on April 6, 1983.

2. The motion to vacate judgment was signed on April 4, 1983 and entered on April 6, 1983.

Cross defendants Kresses also filed on April 18, 1983 motions to set aside the default judgment pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure; these motions were denied on May 6, 1983.

trial on February 7, 1983. It was continued from day to day because of the illness of defendants' counsel; because of counsel's illness the court was unable to proceed on a pending motion filed by the cross defendants to dismiss for lack of personal jurisdiction. The court found personal jurisdiction over Donald and Karen Kress and Ad Quest at a hearing held on February 15, 1983.[3] Its decision was announced in open court.[4] At that time counsel for all parties were also told by the court that the trial of all issues would be held on March 10, 1983. All counsel were also sent written notification of the trial date by the clerk.

■ At the February 15 hearing defendants had filed a motion for a default judg-

---

3. While appellants attack the district court's finding of personal jurisdiction on this appeal, we believe the decision to have been correctly reached under the recent *Helicopteros Nationales De Columbia, S.A. v. Hall,* — U.S. —, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). In that opinion the Supreme Court set forth the standards by which the conduct of non-resident defendants must be gauged to satisfy due process requirements. In summary the Supreme Court requires:
   1. Certain minimum contacts with the forum state must have occurred "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 104 S.Ct. at 1872.
   2. The controversy must "arise out of" the defendants' contacts with the forum state. In other words, there must be a "relationship among the defendant, the forum, and the litigation." 104 S.Ct. at 1872.
   3. There must be "continuous and systematic" contacts between the defendant and the forum. Citing *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).
   Here, in the instant case, the record showed:
   1. The Missouri defendants, appellants, were engaged in business in Texas. They were part of a corporation that manufactured goods in Texas and conducted administrative functions in Missouri.
   2. Appellants' contacts were not merely accidental contacts with the Texas appellees. On the contrary, these contacts were the systematic and continuous conduct of a Texas manufacturing business.
   3. Finally, the controversy arose out of appellants' conduct in Texas. Appellants were sued because they shut off a Texas telephone, closed down a Texas manufacturing operation, and destroyed the value of stock owned by Texas shareholder-operators of a Texas business.

4. THE COURT: All right. Now, the position of the cross defendants as I understand it is that they uh—the position of the cross plaintiffs as I understand it is that the cross defendants Don and Karen Kress, engaged in a conspiracy and each in a course of conduct in part through a Missouri corporation, Ad Quest, which was entirely controlled by the cross defendant, Don Kress, by which these cross defendants appropriated ideas, products, customer list, all of value and all wholly or at least in part belonging to the cross plaintiffs. I find that a prima facia case has been made. The succession of events and the proximity in time between the discussion and agreement of early 1980 and the take over of Ad West's operation in October and November of 1980 is some evidence that the plan at its inception, even at the time when the cross defendants, Don and Karen Kress, were actively present in Texas but even after October of 1980 Ad West being at that time apparently controlled by Don Kress and with the active participation of Karen Kress had to disengage the Texas operations. They wrote to Texas to instruct the Hayes that they were in a position to do nothing more or receive no more compensation. The Kresses saw to it that the telephones not only were disconnected but that calls made to the number in Wills Point would be automatically referred to Missouri. They, the Kresses, must have had responsibility for the repossession of the car of Ad West in Texas, which eventually they took possession of, and then, of course, they filed this lawsuit in the Fall of 1980 in this Court in the name of Ad West, yes but it was the decision and the act and, as far as this Court can see, the deed of Mr. and Mrs. Kress. Now, the jurisdiction over Ad Quest, the corporation is not so easy but it seems to me that at that time, it being completely controlled by Don Kress and being used to further the plan, if it was the plan and if it's ultimately proved and decided that a tort was committed and a wrong was done to Mr. and Mrs. Hayes, that Ad Quest, itself, becomes just a cover if not an alter ego of Don Kress, and for the same reason what it does is attributable to Don Kress. So, it itself is properly held in the jurisdiction of Texas. So, it seems to me that all of these parties are properly held in Texas, and certainly there's no due process question. The service under the Texas Long Arm Statute seems to be satisfied, and there are many contacts it seems by all of the parties with Texas so that they would expect to be subjected to the jurisdiction of the Texas Courts. So, I sustain the service and the personal jurisdiction, and I deny the motion to dismiss for want of personal jurisdiction.

ment.[5]  On February 16 the order finding personal jurisdiction over Donald and Karen Kress and Ad Quest was entered.  On February 25, 1983, Steven A. Wisch, who had been acting as counsel of record only for Ad West, filed his motion to withdraw as counsel because plaintiffs wished to be represented by Anthony Intinni, III, a non-resident of the Eastern District whose office was in Chicago.  Mr. Intinni until that time had been counsel of record only for the cross defendants.  Steven H. Swander was acting as the cross defendants' local counsel assisting Mr. Intinni.  On February 28 the district court granted the motion to substitute counsel.

On March 8 Mr. Intinni's "motion for order enlarging time in which to file responsive pleadings and for continuance of trial" was filed.  In substance, the motion alleged an inability to obtain a transcript of the February 15 hearing which Mr. Intinni had not attended because of a death in his family.  Mr. Intinni's affidavit relates that late on the afternoon of March 7 he informed the trial judge's law clerk that he was in trial in Chicago.  The affidavit states that on March 8 the trial judge's law clerk informed Mr. Intinni that the Judge was not inclined to grant a continuance as the trial date had been set three weeks before and Mr. Intinni had been apprised of that date.

On March 10, 1983 the case was called for trial and Mr. Intinni was not present.  A dismissal and a default judgment were then taken by defendants (cross plaintiffs) and damages proven.[6]

On March 21 Ad West, Karen and Don Kress, and Ad Quest filed a verified motion as cross defendants to vacate the default judgment and reinstate the cause of action.  Accompanying the motion was the affidavit of the Honorable John T. Reynolds, a Judge of the Circuit Court of Cook County, Illinois.  The affidavit stated:

4.  That on January 27, 1983, I was informed by Anthony Intini, III, that he was to be in Trial in the United States District Court, Tyler, Texas, on a case entitled Ad West Marketing, Inc. v. Hayes, et al, beginning February 7, 1983, until the Trial was concluded.  Further, Mr. Intini informed me that after that Trial he was to be engaged in the Califor-

5.  MR. HULLUM [Counsel for defendants]: Your Honor, I would at this time file, with the permission of the Court, a motion for default judgment and submit it—
THE COURT: Against whom?
MR. HULLUM: Against the cross defendants—
THE COURT: What would be your basis for that?
MR. HULLUM: Your Honor, there has been no answer filed.
THE COURT: Well, they had a 12(b)(2) motion, Mr. Hullum.  I'm not going to give a default judgment a minute after I say that there's personal jurisdiction.  I'm going to give them an opportunity to respond.  They don't have to file subject to the decision on personal jurisdiction.

6.  THE COURT: Be seated, please.  Well, where is Mr. Hullum?
MR. HAYES: I think he stepped out in the hall, Your Honor.
THE COURT: He's stepped out in the hall.  That's a strange time to step out in the hall.  I call the case Ad-West Marketing, Inc. versus Ronald Hayes, 80–434, triple action.  I call for response from attorney for Ad-West Marketing, Inc.
(NO RESPONSE)

THE COURT: Mr. Hullum, you represent Mr. and Mrs. Hayes.  I take it on that—the failure of the Plaintiff to appear—you would move for dismissal?
MR. HULLUM: Your Honor, I would move for dismissal as to the—
THE COURT: I haven't proceeded to the 3rd party action yet.
MR. HULLUM: Thank you, Your Honor.  We would move for dismissal.
THE COURT: All right.  This case, of course as the record will show, has been set and re-set and set for trial on this date, and the Court has received some information by telephone that the lawyer for Ad-West Marketing, Inc., Mr. Intini, simply would not appear today and so that action will be dismissed for want of prosecution.  On the 3rd Party action by Mr. and Mrs. Hayes versus Ad Quest, Inc. and Donald Kress and Karen Kress, what says the 3rd Party Plaintiff?
MR. HULLUM: We're ready to proceed, Your Honor.
THE COURT: All right.  I take it there's no one in the courtroom representing the 3rd Party Defendants.  I hear no response.  Mr. Hullum, do you want to make your proof for default judgment?
MR. HULLUM: We do, Your Honor.

nia Bar Exam from February 22, 1983, through February 24, 1983.

5. That based upon those representations, a firm Trial date to conclude these proceedings was set for March 7, 1983, on January 27, 1983. ["These proceedings" refer to the Chicago trial.]

6. That MR. INTINI was informed and ordered by me that he was to remain and be held over for Trial for the entire week of March 7, 1983.

7. That MR. INTINI informed me that the matter in Tyler, Texas, in the United States District Court had been reset to March 10, 1983.

8. I informed MR. INTINI, and ordered him that he was to remain in Chicago, Illinois, and conclude the Trial that had begun in early December, 1982.

9. MR. INTINI informed me that he advised the United States District Court, in Tyler, Texas that he would be unable to proceed to Trial there as he had been held over for Trial in Chicago, Illinois.

10. That MR. INTINI, indeed, proceeded to Trial on March 7, 1983, and continued the Trial until its conclusion on March 10, 1983. That MR. INTINI was before this Court during that period of time both in his own person and with an Associate from his office, MR. RICHARD R. DELLA CROCE.

This affidavit shows that Mr. Intinni was aware of the Illinois trial date on January 27, 1983. His own affidavit reveals that he was aware on February 16, 1983 that the trial in Texas was scheduled for March 10, 1983. That a conflict was apparent in the scheduled trials and that Mr. Intinni was aware of that conflict is readily revealed in the very documents he seeks to have this court rely on in ordering the default judgment set aside. Rather than condoning counsel's course of conduct in which he deliberately allowed conflicting court dates to collide without giving any notice to either court, we hold that Mr. Intinni should have notified the trial judge in Tyler, Texas and the trial judge in Chicago of the conflict in his trial schedule as soon as it became apparent. Waiting until March 8 to attempt to obtain a continuance when the conflict had been apparent for over three weeks was certainly reason enough for the judge to press on with the previously scheduled trial.

Mr. Swander, Mr. Intinni's local counsel who had been present at the February 15, 1983 hearing, revealed in his affidavit filed in support of the motion to vacate the default judgment that he knew of the March 10, 1983 trial date and that he informed Mr. Intinni of that date. His affidavit also relates that Mr. Intinni was to have primary responsibility for handling the trial. It seems that Mr. Swander also had a conflicting trial scheduled in a different Texas county on March 10. Unlike Mr. Intinni, however, Mr. Swander secured the judge's permission at the eleventh hour not to attend the trial on March 10. The judge communicated to Mr. Swander his belief that local counsel, as distinguished from primary counsel, could be excused. But the judge indicated plainly that he expected somebody to be present and ready for trial. Mr. Swander stated he informed Mr. Intinni that his (Swander's) appearance had been excused on March 9 by the trial judge, but that the trial was still scheduled for March 10.

Mr. Swander's affidavit states that he understood the March 10 trial date was subject to "outcry"—which he construed as allowing a reconsideration of the date pending any conflicts in scheduling. That this is the commonly accepted meaning of outcry we need not determine. However, since all counsel knew the trial judge was a visiting judge in Tyler and the conflict in scheduled trials had been apparent to Mr. Intinni as primary counsel for three weeks, outcry—whatever it means—should have been made at the time the conflict was certain. By allowing the trial date to arrive without taking any action prior to the very eve of the trial date to apprise the court of the conflict to minimize inconvenience to all concerned, counsel had the duty to be present in court on March 10. As between Mr. Swander and Mr. Intinni it is unnecessary for us to make an attempt to

apportion responsibility. It suffices that at least one of them should have been in court and since neither appeared, the court had every right to enter the default judgment.

■ Given the facts revealed on the face of the affidavits filed in support of the motion to vacate and the motions made pursuant to Rules 55(c) and 60(b), we find ample cause to uphold the entry of a default judgment.[7]

AFFIRMED.

---

7. Since counsel for plaintiff was present at the February 15 hearing when the default judgment was first filed, and since a copy was served on all parties, this more than suffices for Rule 55's three day notice requirement in taking a default judgment on March 10. As the trial judge noted in his orders denying the Rule 55(c) and 60(b) motions, any contention to the contrary is inaccurate and frivolous.