980 F.2d 912
 Fed. Sec. L. Rep. P 97,216, 24 Fed.R.Serv.3d 614,
RICO Bus.Disp.Guide 8157
 Dan H. HOXWORTH; Louise A. Hoxworth; Bradley Gavron;
Barry Brownstein; Richard Donaldson; Mary Donaldson;
Andress Kernick; Edward J. Bush, Rose M. Weber; Stanley
Bernstein; Dorothy Bernstein; David Reiff; Joel
Lieberman; Jane Scheck; Kenneth J. Holtmeyer, on behalf of
themselves and all others similarly situated
v.
BLINDER, ROBINSON & CO., INC.; Meyer Blinder; John Cox;
Intercontinental Enterprises, Inc.
Bradley GAVRON; Daniel H. Hoxworth; Louise A. Hoxworth;
Barry Brownstein; Richard Donaldson; Mary Donaldson;
Andress Kernick; Edward J. Bush; Rose M. Weber; Stanley
Bernstein; Dorothy Bernstein; David Reiff; Joel
Lieberman; Jane Scheck; Kenneth J. Holtmeyer, on behalf of
themselves and all others similarly situated
v.
BLINDER, ROBINSON & CO., INC.; Meyer Blinder; John Cox;
Intercontinental Enterprises, Inc.
Barry BROWNSTEIN; Don Townsend; Daniel H. Hoxworth;
Louise A. Hoxworth; Bradley Gavron; Barry Brownstein;
Richard Donaldson; Mary Donaldson; Andress Kernick;
Edward J. Bush; Rose M. Weber; Stanley Bernstein; Joel
Lieberman; Jane Scheck; Kenneth J. Holtmeyer, on behalf of
themselves and all others similarly situated
v.
BLINDER, ROBINSON & CO., INC.; Meyer Blinder;
Intercontinental Enterprises, Inc.
Meyer Blinder and Intercontinental Enterprises, Inc.,
Appellants in No. 92-1108.
John Cox, Appellant in No. 92-1116.
 Nos. 92-1108, 92-1116.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 2, 1992.
Decided Dec. 2, 1992.
 
 Stephen J. Mathes (argued), Jan Fink Call, Linda A. Carpenter, David E. Landau, Hoyle, Morris & Kerr, Philadelphia, Pa., for appellants.
 Stephen A. Whinston (argued), Berger & Montague, P.C., Marvin A. Miller, J. Dennis Faucher, Ellen Meriwether, Miller Faucher Chertow Cafferty and Wexler, Michael R. Lastowski, Michael F. McCarthy, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for appellees.
 Before: SLOVITER, Chief Judge, GREENBERG and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Chief Judge.
 
 
 1
 Defendants challenge the district court's entry of a default judgment, subsequently assessed in the amount of $73 million, for disregarding certain court orders and for failing to appear at trial. Defendants argue that the district court did not have the authority to impose default as a sanction under Fed.R.Civ.P. 55 and that the court abused its discretion in holding that their behavior warranted such a draconian order. They also challenge the propriety of the court's orders certifying a class action and declining to order the arbitration of the securities fraud claims that are the subject of this dispute.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 A.
 Background
 
 2
 In 1988, three separate class actions were filed in the United States District Court for the Eastern District of Pennsylvania by Dan and Louise Hoxworth, Bradley Gavron, and Barry Brownstein on behalf of investors who claimed to have been defrauded in connection with the purchase and sale of various "penny stocks."[1] The three actions, which were subsequently consolidated for purposes of pretrial proceedings, asserted claims against (1) Blinder, Robinson & Co., Inc. (Blinder, Robinson), a Colorado-based securities dealer through which plaintiffs consummated their stock transactions; (2) Meyer Blinder, the Chairman and President of Blinder, Robinson; and (3) John Cox, the Vice President of Blinder, Robinson. Later, plaintiffs amended their complaint to include a fourth defendant, Intercontinental Enterprises, Inc. ("IEI"), Blinder, Robinson's corporate parent.[2] Meyer Blinder is the President of IEI and the owner of 52% of its stock. John Cox is an officer and director of the corporation.
 
 
 3
 The complaint alleged that Blinder, Robinson defrauded the purchasers and sellers of twenty-one equity securities (the "class securities") in violation of federal and state securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (1988 & Supp. II 1990), and common law fiduciary duty. The complaint also sought to hold Meyer Blinder, John Cox, and IEI jointly and severally liable for these acts as "control persons" under section 15 of the Securities Act of 1933[3] and section 20(a) of the Securities and Exchange Act of 1934.[4]
 
 
 4
 The gravamen of the plaintiffs' complaint as later refined focused on Blinder, Robinson's failure to disclose to its customers its excessive markup policy.[5] The National Association of Securities Dealers (NASD), a self-regulating organization of securities brokers of which Blinder, Robinson is a member, promulgates guidelines for the maximum markups that a broker may charge to customers with whom it trades as a principal. The guidelines specify a maximum markup of 5% above the security's prevailing market price, a percentage which the plaintiffs claim Blinder, Robinson substantially exceeded on numerous occasions. Although plaintiffs did not sue directly on a violation of the NASD guidelines, see Newman v. L.F. Rothschild, Unterberg, Towbin, 651 F.Supp. 160, 162-63 (S.D.N.Y.1986) (violation of the guidelines does not give rise to private right of action), they proceeded on the theory, inter alia, that the failure to disclose non-compliance with the guidelines was a material omission. The first time this case was before us, we approved the district court's conclusion that this omission was material. See Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 200 (3d Cir.1990) (Hoxworth I ).
 
 
 5
 In that first appeal, taken by defendants from the district court's orders granting a preliminary injunction to freeze defendants' assets, we held that plaintiffs had shown a strong likelihood of prevailing on the merits but we vacated the injunction because it was "fatally overbroad." Id. at 211. We declined to address the interlocutory issue of the propriety of the class certification at that time, but we noted that there were certain ambiguities in the definition of the class, which we attributed to the absence of fact findings, and we stated that the parties or the district court could address those issues on remand. See id. at 191 & n. 7, 201.
 
 B.
 On Remand From Hoxworth I
 
 6
 Following the remand to the district court, the Securities Investors Protection Corporation (SIPC) filed a complaint on July 31, 1990 in the United States District Court for the District of Colorado under the Securities Investors Protection Act of 1970, 15 U.S.C. §§ 78aaa-78lll (1988), seeking the liquidation of Blinder, Robinson. As a result, the Hoxworth action was automatically stayed against Blinder, Robinson pursuant to 11 U.S.C. § 362(a) (1988 & Supp. III 1991), but the class action continued against the remaining three defendants as control persons of the securities firm. On April 5, 1991, plaintiffs filed an amended consolidated complaint, which added IEI as a defendant, revised the claim to focus on the omission of the information as to the excessive markups charged by Blinder, Robinson, and withdrew any claim for relief directly against Blinder, Robinson in light of the liquidation proceeding. On June 20, 1991, defendants answered the complaint, denying all allegations of unlawful practices and raising several affirmative defenses.
 
 
 7
 Finally, on November 12, 1991, plaintiffs moved, pursuant to Fed.R.Civ.P. 23(d), to add additional class representatives, to modify the definition of the class securities,[6] and to authorize notice to individual class members. These modifications did not expand the scope of the class claims, but were designed to respond to the ambiguities which we had noted in Hoxworth I. In particular, plaintiffs continued to define the class to include all persons who had purchased or sold the class securities through Blinder, Robinson between September 1, 1984 and December 31, 1986. Although defendants did not oppose the proposed modifications, which the district court adopted in an order dated December 12, 1991, IEI reasserted its opposition to the district court's original class certification order in responding with regard to class notice.
 
 
 8
 On August 1, 1991, the district court, in an effort to move the case towards trial, entered a scheduling order fixing a discovery deadline of November 15, 1991 and a trial date of February 3, 1992. The order directed defendants to file a pretrial memorandum no later than January 20, 1992.
 
 
 9
 On September 17, 1991, the defendants' counsel, James D. Crawford of the law firm of Schnader, Harrison, Segal & Lewis, moved to withdraw from the case because of a fee dispute. Defendants did not object to this withdrawal, provided that the court would stay action on all pending matters for sixty days to permit them to obtain substitute counsel. Plaintiffs, on the other hand, objected to the request on the ground of prejudice, noting that the case had been pending for more than three years. Nonetheless, the district court granted Crawford's motion to withdraw on October 18, 1991. It did not, however, alter its previous scheduling order and it directed the defendants to "obtain substitute counsel whose appearance shall be entered forthwith." App. at 308.
 
 
 10
 Meanwhile, plaintiffs sought to complete discovery, but defendants were not cooperative. On September 25, 1991, plaintiffs served a deposition subpoena on IEI concerning the corporation's financial operations and its relationship with its subsidiaries, including Blinder, Robinson. IEI failed to designate any of its officers or directors to testify on its behalf and it did not produce the documents identified in the subpoena. On October 28, 1991, the day before the deposition was scheduled, IEI's in-house counsel, Kalmon Glovin, telephoned the court requesting a postponement, which the court denied.
 
 
 11
 When Meyer Blinder and Glovin appeared the next morning, they designated Stephen Kohn, one of IEI's directors, pursuant to Fed.R.Civ.P. 30(b)(6) to testify in response to the subpoena. However, Kohn stated that he had no knowledge of any of the events referred to in the notice of deposition and that the only person with such knowledge had been fired from IEI four days earlier. Counsel for the plaintiffs suggested that Blinder, as President of the company, would have knowledge of the relevant information, but Blinder refused to be deposed on Fifth Amendment grounds.[7] In addition, Glovin was also unable to specify when he would be able to produce the requested documents.
 
 
 12
 On November 14, 1991, plaintiffs moved to compel discovery against IEI and Meyer Blinder under Fed.R.Civ.P. 37(d) for failure to produce documents or to respond adequately to their deposition subpoena. Only the corporation responded, opposing the plaintiffs' motion in a document signed by Glovin. IEI stated that it could not comply with the discovery requests because it was preoccupied with its obligation to produce documents in connection with the SIPC bankruptcy proceeding in Colorado, and that the only person able to respond to the plaintiffs' requests was Meyer Blinder himself, who continued to assert his Fifth Amendment privilege. IEI also requested that any further discovery be postponed until defendants were able to secure new counsel. The district court denied IEI's request and on November 26, 1991 ordered IEI to produce the necessary documents at its own expense within five days and to identify an IEI official to testify at the deposition within ten days.
 
 
 13
 None of the three defendants complied with the court's order to file a pretrial memorandum by January 20, 1992. On January 24, 1992, Meyer Blinder filed a pro se motion for a continuance, which the district court denied on January 30, 1992. When IEI failed to comply with the court's November 26, 1991 order requiring production of documents and witness identification,[8] plaintiffs moved on January 29, 1992 for a default judgment against IEI and Meyer Blinder pursuant to Fed.R.Civ.P. 37(b)(2)(C). They also served a request for admissions on the defendants, to which only Cox responded.
 
 
 14
 The motion for a default remained pending when the trial was scheduled to begin on February 3, 1992. On that morning, Steven Mathes, of Hoyle, Morris & Kerr, stated that he would be willing to enter an appearance on behalf of the defendants if a postponement were granted. Prior to ruling on this request, and in response to counsel's statement that "Blinder is ... on trial in Colorado in bankruptcy court," App. at 512, the district court telephoned the Colorado bankruptcy court to determine if Meyer Blinder was occupied in that proceeding at that time. After ascertaining that Blinder "ha[d] not been attending all of the sessions," App. at 519, the court refused Mathes's request for a postponement and proceeded to enter a default in favor of plaintiffs.
 
 
 15
 On the same day, the defendants were personally served with notice of the default and of a hearing scheduled for February 7, 1992 to determine damages. The defendants did not attend that hearing. Plaintiffs presented the testimony of their expert, John T. Christensen, who calculated Blinder, Robinson's excessive markups for the twenty-one class securities. Christensen posited a markup of ten percent (twice that of the NASD guidelines) as excessive. He compared the amount paid by class members for each security to the price Blinder, Robinson paid for the stock on the same day or one day earlier. He then determined the extent to which the difference between these two figures exceeded ten percent, totaled the excessive sums for all of the securities, and then tripled the sum as provided in 18 U.S.C. § 1964 (1988 & Supp. II 1990). On the basis of this evidence, the district court determined that plaintiffs proved treble damages in the amount of $73,319,824.45, and it entered a default judgment jointly and severally against IEI, Meyer Blinder, and John Cox for that amount.[9] Plaintiffs' counsel was also granted attorneys fees of $2,350,117.45 and costs of $258,364.62. Each of the defendants filed timely notices of appeal.[10] We have jurisdiction under 28 U.S.C. § 1291 (1988).
 
 II.
 DISCUSSION
 A.
 Default Under Rule 55
 
 16
 In the course of its ruling imposing the default for defendants' failure to comply with the order to obtain counsel and to appear at trial, the district court explicitly referred to Rule 55 as authority for its action. Defendants first argue that Rule 55 cannot be used to impose a default against a defendant who has filed an answer and actively litigated during pretrial discovery. To resolve this issue, we turn first to the language of the Rule itself, which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed.R.Civ.P. 55(a) (emphasis added).[11] By its very language, the "or otherwise defend" clause is broader than the mere failure to plead.
 
 
 17
 This court has previously signified this broad interpretation of the "or otherwise defend" clause. In Farzetta v. Turner & Newall, Ltd., 797 F.2d 151 (3d Cir.1986), two of the three defendant asbestos manufacturers sued in a strict liability action chose not to defend after they filed answers to the complaint, citing financial difficulties. Plaintiff moved under Rule 55 for default judgments against these two defendants. Defendants contested the propriety of that action, arguing that "default judgments would be improper because they had filed answers, actions they claimed required Farzetta to prove his case, regardless of whether they defended." Id. at 152. The district court deferred its ruling on the default judgment motion, and proceeded with trial on the merits as to the sole participating defendant. The jury found for the third defendant on the ground that plaintiff had assumed the risk. The district court declined to enter judgment for the remaining two defendants on that theory, and instead granted the plaintiff's Rule 55 motion for default judgment. On appeal, we affirmed, and although our discussion was directed to the assumption of risk issue, see id. at 155, our affirmance necessarily signified approval of entry of a default judgment under Rule 55 against a party who had previously answered but failed to appear at trial.
 
 
 18
 Similarly, in Brock v. Unique Racquetball & Health Clubs, 786 F.2d 61 (2d Cir.1986), the district court entered a default after defendant's counsel failed to attend the resumption of a bench trial. Although the court noted that "[t]his is not the typical Rule 55 case in which a default has entered because a defendant failed to file a timely answer," id. at 64, it concluded that the Rule authorizes the entry of default as a sanction. Id. "[A] trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance...." Id. We agree.
 
 
 19
 Other cases support the proposition that the district court's power to maintain an orderly docket justifies the entry of a default against a party who fails to appear at trial. See Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141 (9th Cir.1989) (affirming Rule 55 default judgment against plaintiff on defendant's counterclaims where plaintiff did not attend pretrial conferences and "fail[ed] to attend on the first day of a trial scheduled months before"); Ad West Mktg., Inc. v. Hayes, 745 F.2d 980, 983-84 (5th Cir.1984) (affirming Rule 55 default against cross-defendants who failed to file answer or appear on scheduled trial date); Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, 740 F.2d 1499, 1512 (11th Cir.1984) ("The failure to appear at a duly scheduled trial after months of preparation by the parties and by the trial court is a serious offense for which the entry of a default [under Rule 55] is appropriate."); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981) (defendant's "failing to appear for a deposition, dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial--were sufficient to support a finding that he had 'failed to plead of otherwise defend' under Federal Rule of Civil Procedure 55"); see also 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2693, at 477-78 (2d ed. 1983) (Rule 55 default permissible to maintain "an orderly, efficient judicial system").
 
 
 20
 Although we acknowledge that some courts have stated that a Rule 55 default cannot be based on a failure to appear at trial, see, e.g., Bass v. Hoagland, 172 F.2d 205, 210 (5th Cir.), cert. denied, 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494 (1949), we are not persuaded by their reasoning and decline to follow it. The failure to plead is no greater an impediment to the orderly progress of a case than is the failure to appear at trial or meet other required time schedules, and we see no reason why the former would be subject to a sanction not equally applicable to the latter. Indeed, the Supreme Court signified the seriousness with which it viewed counsel's failure to appear at a scheduled pretrial conference, sustaining dismissal on that ground in Link v. Wabash Railroad, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).
 
 
 21
 Nor do we doubt that the district court in this case could have imposed a default judgment against the defendants for failure to comply with its own unambiguous orders to obtain substitute counsel, file a pretrial memorandum, and respond to the plaintiffs' discovery requests. See, e.g., Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir.1991) (Rule 55 default proper where "court was confronted by a recalcitrant party who failed to comply with its order to obtain counsel"); Dow Chem. Pac. Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 334 (2d Cir.1986) (court entered Rule 55(a) default eight months after defendant failed to obtain new counsel, although entry of judgment did not occur for another year); McGrady v. D'Andrea Elec., Inc., 434 F.2d 1000, 1001 (5th Cir.1970) (failure to appear at pretrial conference is ground for Rule 55 default); Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir.1967) (per curiam) (reversing district court's refusal to grant Rule 55 default judgment where corporate defendant had not complied for one year with district court's order to secure new counsel after withdrawal of original counsel); Ferraro v. Kuznetz, 131 F.R.D. 414, 416 (S.D.N.Y.1990) (imposing default judgment against defendant under Rule 55 for failure to file pretrial order, appear at pretrial conference, and comply with discovery requests).
 
 
 22
 Although we conclude that the district court could have permissibly relied on Rule 55 in entering a default against the defendants on February 3, 1992, we note that this may not have been the sole basis for its ruling, at least with respect to Meyer Blinder and IEI. As noted above, plaintiffs had filed a Rule 37(b)(2)(C) motion for sanctions in the nature of a default against Blinder and IEI for failure to comply with court-ordered discovery. This motion was pending before the district court on the scheduled trial date and was brought to the court's attention at least twice during the proceeding. Although in arguing for the default counsel for plaintiffs discussed the procedures set forth in Rule 55, such as the need for three days' notice before a hearing on damages, see Fed.R.Civ.P. 55(b)(2), we cannot rule out the possibility that the court may have relied on the pending Rule 37 sanction motion in imposing the default. See, e.g., Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992); Hicks v. Feeney, 850 F.2d 152, 155 (3d Cir.1988), cert. denied, 488 U.S. 1005, 109 S.Ct. 786, 102 L.Ed.2d 777 (1989). Thus, at least as to Blinder and IEI, Rule 37 provides an alternate basis to support the district court's sanction order.
 
 B.
 Default as a Sanction
 
 23
 Defendants next argue that the district court improperly entered default judgment as a sanction in the circumstances of this case. We review that decision under an abuse of discretion standard. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1148 (3d Cir.1990). As we explained in Comdyne I, we apply "some or all of the six-part test enunciated in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868 (3d Cir.1984)," in reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim. Comdyne I, 908 F.2d at 1148.
 
 
 24
 In deciding whether to impose a default, the district court must consider:
 
 
 25
 (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party of the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
 
 
 26
 Poulis, 747 F.2d at 868 (emphasis omitted).
 
 
 27
 Defendants argue that the district court failed to make findings as to all of the Poulis factors. Although we have required district courts to make explicit factual findings concerning these factors, see, e.g., Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir.1987), we have also stated that it is not necessary that all of the factors point toward a default before that sanction will be upheld. See Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992).
 
 
 28
 In this case, the district court made the following findings when it arrived in court on the scheduled trial date to find plaintiffs present but defendants unprepared to proceed:
 
 
 29
 Based upon the factors that have been outlined by the Third Circuit in [Poulis ], the Court finds that those factors have been met here, that the parties in this case have been personally responsible for the conduct of this litigation, that the plaintiffs have been prejudiced by the failure of the defendants in this case in many instances to meet the scheduling orders and respond to discovery, that there has been a history all throughout this case of delay on the part of the defendants, ... that I find that the conduct in this regard has been willful and in bad faith....
 
 
 30
 ....
 
 
 31
 In my opinion, in view of the long history of this case, no other sanctions that I could enter would be effective.
 
 
 32
 From the offer that I have heard, the claim of the plaintiffs is a strong claim. I had the opportunity of hearing also evidence at the time of the request for the preliminary injunction.
 
 
 33
 Based upon all of that, the Court is granting the request that I direct the clerk to enter a default in this case....
 
 
 34
 App. at 557-58.
 
 
 35
 Defendants argue that these findings are inadequate and unsupported by the record. Accordingly, we proceed with a factor by factor analysis.
 
 1. Personal Responsibility
 
 36
 This is not a situation where we must allocate responsibility between the parties and their counsel. Defendants had personal responsibility for the conduct of the litigation after their attorney withdrew on October 18, 1991. Each of the three defendants was aware of the court's orders and the need to comply with discovery and to file a timely pretrial memorandum.
 
 
 37
 Meyer Blinder was personally present at the October 28, 1991 deposition, as was house counsel for IEI, when IEI was required to designate a corporate witness pursuant to Rule 30(b)(6). Rather than select an informed witness, Blinder and/or Glovin designated an IEI director who had no knowledge of the relevant facts. Four days earlier, Meyer Blinder had fired the only other person who could have shed some light on the facts.
 
 
 38
 John Cox's role was not as active as Meyer Blinder's, but he also was aware of the discovery requirements as he personally filed responses to plaintiffs' requests for admissions. Nonetheless, he failed to appear at trial and at the damages hearing, and has never suggested he was unaware of his responsibilities.
 
 
 39
 Such behavior is analogous to that before us in Comdyne I, where we affirmed the district court's finding of defendants' personal responsibility because "[d]espite their knowledge of the pending sanctions and discovery orders, the defendants nevertheless continued to remain intransigent in their defiance of these orders." 908 F.2d at 1149; see also Curtis T. Bedwell & Sons v. International Fidelity Ins. Co., 843 F.2d 683, 692 (3d Cir.1988) (plaintiff shared personal responsibility for discovery abuses when, after firing his counsel, he rescheduled depositions, failed to produce documents, and maintained a "lax attitude" about the discovery process in general).
 
 2. Prejudice to the Plaintiffs
 
 40
 We reach a similar result with respect to the prejudice to the plaintiffs. Although the district court's discussion of the prejudice factor is not extensive, its conclusion is amply supported by the record. Plaintiffs were required to expend significant time and costs in attempting to secure responses to their discovery requests, responses which were never adequately made. As a result, plaintiffs were forced to prepare their pretrial memorandum without the information about Blinder, Robinson's markup practices which was necessary to prove plaintiffs' case at trial. Finally, plaintiffs failed to receive the defendants' pretrial memorandum, further prejudicing their ability to prepare an effective trial strategy.
 
 
 41
 In Poulis, we found prejudice to the non-defaulting party where "[t]he interrogatories were never answered nor were objections filed; defense counsel was obliged to file a motion to compel answers, and was obliged to file its pretrial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first." 747 F.2d at 868; see also Bedwell, 843 F.2d at 694 (upholding district court's finding of prejudice where although the defendants "vigorously pursued the available discovery methods to avoid being prejudiced," they were "deprived of important information" because plaintiff delayed compliance with discovery orders). The record in this case demonstrates similar prejudice. In addition, the prejudice flowing from failure to proceed with a scheduled trial after the case had been pending for more than three years is apparent.
 
 3. History of Dilatoriness
 
 42
 Although we believe that the defendants' dilatory behavior after counsel withdrew on October 18, 1991 provides a sufficient history of dilatoriness, we note that long before these events, while defendants were still represented by counsel, they failed to respond voluntarily to any of the plaintiffs' early discovery requests. As a result, plaintiffs were obliged to file two separate motions to compel and two motions for sanctions. We can infer that the district court considered this conduct when it stated that "there has been a history all throughout this case of delay on the part of the defendants." App. at 557. This is a sufficient factual basis to support the court's finding of dilatoriness. See Poulis, 747 F.2d at 865, 868 (dilatoriness existed where plaintiff twice refused to file pretrial statement and failed to answer interrogatories).
 
 4. Willfulness and Bad Faith
 
 43
 The district court believed that the defendants' conduct was intentional and not the result of excusable neglect. The court's finding on this point was particularly specific and detailed:
 
 
 44
 I harken back to the incident of the dismissal or the withdrawal of Mr. Crawford in particular where he was simply not paid and he had no choice but to ask to withdraw.... [This] was just a self-inflicted wound on the part of the client. They knew that that would be the result and never did I hear the client say that they couldn't afford to pay. I think ... that the client simply picked a fight with the lawyer in order to try to get new counsel into the case to necessitate a delay.
 
 App. at 557-58.[12]
 
 45
 This is not a case in which defendants were unable to find counsel to represent them but one during which they manipulated the situation. The defendants' professed inability to find replacement counsel is belied by the fact that Meyer Blinder and IEI were represented by attorneys before the Colorado bankruptcy court. The district court even offered to have Kalmon Glovin, IEI's in-house counsel, admitted to the Eastern District of Pennsylvania to replace Schnader, Harrison, but defendants refused to appoint Glovin as their trial counsel, using him instead tactically to file certain motions while Blinder acted pro se on other occasions. Moreover, defendants' present counsel, Stephen J. Mathes, had previously represented them before Mr. Crawford was retained. See note 12 supra. Inasmuch as the trial date had been set months earlier, the district court was entitled to view with some cynicism the coincidence of Mathes's reappearance for defendants on that date, and then only wrapped in conditions.
 
 
 46
 Further evidence of bad faith can be found in the defendants' total failure to respond to plaintiffs' requests for documents. Although IEI asserted in its opposition to the Rule 37 motion for sanctions that its compliance was precluded by conflicting obligations to the SIPC trustee, it could have easily directed its Colorado attorney, who was reviewing the same documents pursuant to an order of the bankruptcy court, to make copies for the Hoxworth class's attorneys. Based on this extensive evidence of willful conduct, we cannot say that the district court's finding that defendants acted in bad faith was clearly erroneous. Accord Bedwell, 843 F.2d at 695 (affirming district court's finding of bad faith where plaintiff knew that its counsel "willfully failed to comply with three court orders, and ... outstanding discovery requests, and failed to advance plausible reasons for the failures").
 
 5. Alternative Sanctions
 
 47
 Without detailed discussion, the district court stated that "in view of the long history of this case, no other sanctions that I could enter would be effective." App. at 557. As we have repeatedly stressed, " '[d]ismissal must be a sanction of last, not first, resort.' " Emcasco, 834 F.2d at 75 (quoting Carter v. Albert Einstein Med. Cent., 804 F.2d 805, 807 (3d Cir.1986)). It cannot be denied that the court could have imposed some lesser penalty than default on Blinder, Cox, and IEI, such as imposition of costs and attorneys fees incurred in the course of plaintiffs' numerous motions to compel discovery. See Poulis, 747 F.2d at 869. Alternatively, it might have granted a postponement but precluded the defendants from presenting testimony at trial on issues related to their abuse of the discovery process. See Bedwell, 843 F.2d at 695-96. It is evident, however, that in light of the history of the defendants' conduct culminating in what the district court may have viewed as the last straw of not appearing at the firm trial date, the district court's finding that no other sanction would be "effective" was not an abuse of its discretion.
 
 
 48
 6. Meritoriousness of the Claims and Defenses
 
 
 49
 The district court concluded that the plaintiffs' claims were meritorious. Its decision finds strong support in our earlier analysis in Hoxworth I. Defendants argue that before granting default as a sanction, the district court should have evaluated their denials and affirmative defenses. Nothing in our precedent requires the district court to evaluate defenses that do not bear directly on the meritoriousness of the underlying claim.
 
 
 50
 Nor have we ever required that the district court balance both parties' claims and defenses. On the contrary, as we pointed out in Bedwell, unless the pleading asserted a dispositive defense (or claim), the issue of meritoriousness would be neutral. 843 F.2d at 696. We decline to require the district court to have a mini-trial before it can impose a default.
 
 7. Summary of the Poulis Factors
 
 51
 Although Poulis and its progeny have emphasized that the sanction of default is disfavored, our cases have also held that the district court rather than the court of appeals is in the best position to evaluate whether a default is proper. See e.g., Mindek, 964 F.2d at 1373-74. Guided by the principles we articulated in Poulis, the district court here concluded that a default against Blinder, Cox, and IEI was appropriate. Based on our review of the record, we have concluded that there is adequate support for the findings that underlay the district court's action. As the Supreme Court stated in regard to sanctions under Rule 37, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). Accordingly, we find no abuse of discretion and affirm the entry of default and the default judgment.
 
 C.
 Class Certification
 
 52
 Defendants sought to have this court overturn the district court's class certification order when they appealed the preliminary injunction order in Hoxworth I. We lacked appellate jurisdiction over the class issue at that time. Now that the district court has entered a final judgment, the class issue is properly before us. See United States v. 228 Acres of Land and Dwelling, 916 F.2d 808, 811 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991).
 
 
 53
 Plaintiffs assert that defendants are foreclosed from challenging the certification of the class because of their default. We see no reason why that should be so.
 
 
 54
 Ordinarily, a party which has suffered a default judgment may not raise potential defenses once a default judgment has been entered. Thomson v. Wooster, 114 U.S. 104, 114, 5 S.Ct. 788, 793, 29 L.Ed. 105 (1885); Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975). However, a challenge to class certification is not the type of potential defense to the merits which the party loses through its default, except to the extent that it depends on the court's resolution of factual issues which defendants could have addressed at the scheduled hearings or in required filings had they not defaulted.
 
 
 55
 Defendants contend that the class certified on behalf of all investors who purchased or sold any of the twenty-one class securities between September 1, 1984 and December 31, 1986 fails to satisfy the typicality and adequacy of representation requirements of Fed.R.Civ.P. 23(a)(3) and (4). Our review of a district court's decision on class certification is for abuse of discretion. Winston v. Children & Youth Servs., 948 F.2d 1380, 1392 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2303, 119 L.Ed.2d 225 (1992); see also Eisenberg v. Gagnon, 766 F.2d 770, 784 (3d Cir.), cert. denied, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985).
 
 
 56
 In Eisenberg, where we held that the district court had abused its discretion in failing to certify a plaintiff class based, like this one, on violations of section 10(b), Rule 10b-5, civil RICO, and state law, we stated that Rule 23(a)(3)'s typicality requirement "permits the [district] court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented." 766 F.2d at 786. The typicality inquiry requires the court to determine "whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' " Id. (quoting Weiss v. York Hosp., 745 F.2d 786, 809 n. 36 (3d Cir.1984), cert. denied, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985)). On the facts presented in Eisenberg, we concluded that the fact that the representatives had invested in only two of the three limited partnerships charged with violating federal securities laws did not make their claims atypical.
 
 
 57
 In this case, after the class was modified, there were class representatives for fifteen of the twenty-one class securities, a coverage that fully satisfies the requirements of the Rule. Defendants argue against typicality because two of the fifteen representatives made a profit on some of their transactions with Blinder, Robinson, but they ignore the fact that plaintiffs' second consolidated complaint added two additional representatives who made no such profit.
 
 
 58
 Moreover, now that the plaintiffs' claim has been narrowed to one for damages stemming solely from Blinder, Robinson's course of conduct in failing to advise purchasers of its excessive markup policy in contravention of the NASD guidelines, typicality is more clearly satisfied. As we stated in Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123 (3d Cir.1987), cert. denied, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988), "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." Id. at 130 (quoting 1 Herbert B. Newberg, Newberg on Class Actions § 3.15, at 168 (2d ed. 1985)).
 
 
 59
 The adequacy of the class representatives can also be easily supported. As we stated in Weiss, " '[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.' " 745 F.2d at 811 (quoting Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)). Defendants do not denigrate plaintiffs' counsel's ability or experience. Defendants do suggest that the class members' ownership of IEI stock (one of the class securities) raises a conflict issue. In light of the defendants' failure to provide any factual support for this theory during pretrial discovery, we cannot say that the district court abused its discretion in finding that no such conflict existed. Similarly, plaintiffs' decision to relinquish their section 12(2) claims did not reflect any conflict within the class because it was made in response to this court's decision in Ballay v. Legg Mason Wood Walker, Inc., 925 F.2d 682, 689-93 (3d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 79, 116 L.Ed.2d 52 (1991), that section 12(2) was inapplicable in these circumstances.
 
 
 60
 Defendants also assert that there was no basis for the district court's conclusion that common questions predominated over individual ones, as required by Rule 23(b)(3). On the contrary, the well-pleaded complaint fairly claimed a uniform scheme to defraud investors in the class securities, who relied on Blinder, Robinson's material omissions concerning its markup policy. We suggested in Hoxworth I, 903 F.2d at 201, that these allegations would support class action treatment, and we expressly so hold now. See also Eisenberg, 766 F.2d at 786 (district court abused its discretion in denying certification where "[p]laintiffs' case was that these were identical investments, prepared by the same defendants, and containing the same alleged omissions and misrepresentations").
 
 
 61
 Once the claims were narrowed to the uniform course of conduct engaged in by Blinder, Robinson in omitting the material information as to its excessive markups, the district court could reasonably find that common questions predominated. Defendants, of course, will not be heard to argue that they did not engage in such a common course. Furthermore, plaintiffs are entitled to the presumption of reliance set forth in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and defendants lost their opportunity to defeat the presumption when they failed to participate at trial.
 
 
 62
 Defendants' final challenge to the district court's findings under Rule 23(b)(3) is their claim that individualized determinations are paramount because a subset of the class members' claims are time-barred. Although we intimated in Hoxworth I that this might be a basis for the district court to modify its certification order, see 903 F.2d at 201 n. 22, we now conclude that there was no abuse of discretion in the original certification of the class period. As the Court of Appeals for the Ninth Circuit has stated:
 
 
 63
 The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones. Given a sufficient nucleus of common questions, the presence of the individual issue of compliance with the statute of limitations has not prevented certification of class actions in securities cases.
 
 
 64
 Cameron v. E.M. Adams & Co., 547 F.2d 473, 478 (9th Cir.1976) (quotation omitted); see also In re Energy Sys. Equip. Leasing Secs. Litig., 642 F.Supp. 718, 752-53 (E.D.N.Y.1986) ("Courts have been nearly unanimous ... in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present.").
 
 
 65
 We recognize that the class period extends back almost three and one-half years before the complaint was filed and that the longest statute of limitations available in securities fraud cases is the three-year statute applicable where a plaintiff has not "discover[ed] the facts constituting the violation," In re Data Access Sys. Secs. Litig., 843 F.2d 1537, 1550 (3d Cir.) (in banc), cert. denied, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).
 
 
 66
 However, the plaintiffs' complaint in this case also includes claims under civil RICO, which is governed by a four-year statute of limitations. See Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). As we have recently noted, "a civil RICO cause of action is not to be identified with its underlying predicate acts in determining statute of limitations issues." Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1130 (3d Cir.1988); see also Douglas E. Abrams, The Law of Civil RICO § 2.4, at 60 (1991) ("A civil RICO action's timeliness depends only on [the four-year] limitations period; where the civil RICO action itself is timely, a predicate act may be alleged and proved even if suit alleging the act would be time barred in RICO's absence.").[13]
 
 
 67
 Thus, although some of the class claims may have been beyond the limitations period for purposes of the securities law violations, they were timely with respect to the RICO claims. We therefore find no abuse of discretion with respect to the class period as certified, nor do we believe that the statute of limitations issue undermines the district court's conclusion that common questions predominated. We conclude, therefore, that the district court did not abuse its discretion in certifying the class.
 
 D.
 Motion to Compel Arbitration
 
 68
 Defendants' final claim on appeal is that the district court erred in refusing to stay this action and compel arbitration of the Hoxworths' claims.[14] Our review on that issue is plenary. See Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, 885 F.2d 1149, 1152 (3d Cir.1989). We need not resolve plaintiffs' initial contention that the arbitration clause, which was entered into only between the Hoxworths and Blinder, Robinson, is not enforceable by the nonsignatory defendants. Rather, we conclude that the defendants have waived whatever right they may have had to arbitration by actively litigating this case for almost a year prior to filing their motion to compel arbitration.
 
 
 69
 In Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777 (3d Cir.1975), we stated that "[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver," but we approved of cases finding waiver "where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." Id. at 783 (quotation omitted). There was no waiver in Gavlik, because the defendant had moved for a stay pending arbitration immediately after removing the action to federal court. Id. at 783-84. We stated that prejudice is the touchstone for determining whether the right to arbitrate has been waived, and noted that Gavlik had failed to demonstrate any prejudice from the procedural matters defendants raised before moving to arbitrate. Id. at 784.
 
 
 70
 In contrast, in this case defendants participated in numerous pretrial proceedings during the more than eleven months before Blinder, Robinson moved to compel arbitration. Defendants filed a motion to dismiss the complaint for failure to state a claim on which relief could be granted and a motion to disqualify plaintiffs' counsel; they took the deposition of each of the named plaintiffs, depositions that would not have been available in arbitration; they took the deposition of John Cox, which prompted in turn a motion by plaintiffs to protect their right to depose Cox in the future; they inadequately answered plaintiffs' discovery requests, prompting plaintiffs to file two motions to compel the production of documents and answers to interrogatories, which defendants opposed; and they later moved for a stay of discovery. In addition, defendants consented to the district court's first pretrial order consolidating the three class actions, and they filed a lengthy memorandum in opposition to plaintiffs' motion for class certification. Only on December 21, 1988, after defendants' motion to dismiss the complaint was denied and plaintiffs' motion to compel discovery was granted, did Blinder, Robinson file its motion to compel arbitration.
 
 
 71
 Plaintiffs have characterized the prejudice they suffered from defendants' failure to raise arbitration promptly as twofold: plaintiffs devoted substantial amounts of time, effort, and money in prosecuting the action, while defendants were able to use the Federal Rules to conduct discovery not available in the arbitration forum.
 
 
 72
 Although waiver is not favored, see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983), courts have not hesitated to hold that the right to arbitrate has been waived under circumstances similar to those here. In National Foundation for Cancer Research v. A.G. Edwards & Sons, 821 F.2d 772 (D.C.Cir.1987), for example, the court found waiver where the defendant had "invoked the litigation machinery" by, inter alia, filing an answer without asserting arbitration as an affirmative defense, requesting documents and deposing plaintiff's witnesses, opposing plaintiff's motion to amend its complaint, and moving for summary judgment. Id. at 775. Defendant's "[s]ubstantial invocation of the litigation process," combined with forcing the plaintiff to "litigate the substantive issues in the case, including its arbitrable claims," constituted the requisite prejudice. Id. at 777.
 
 
 73
 Similarly, in Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156 (5th Cir.1986), denial of the motion to compel arbitration was upheld where the defendant, during the seventeen months after the complaint was filed, " 'initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pretrial deadlines, all without demanding arbitration.' " Id. at 1159 (quoting district court findings). The court found that the plaintiffs had been prejudiced by the discovery process (which was not available in arbitration), the costs incurred in responding to the motions to dismiss and for summary judgment, and the defendant's failure to assert its arbitration right before filing its motion to compel. The court concluded that "where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." Id. at 1161.
 
 
 74
 Other courts have decided similarly. See Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 759 (9th Cir.1988) (waiver where defendant chose "to litigate actively the entire matter--including pleadings, motions, and approving a pretrial conference order--and did not move to compel arbitration until more than two years after [plaintiffs] brought the action"); United States ex rel. Duo Metal & Iron Works, Inc. v. S.T.C. Constr. Co., 472 F.Supp. 1023, 1025 (E.D.Pa.1979) (waiver where plaintiff expended "considerable effort and expense in conducting ... discovery" for nineteen months prior to motion to compel); Liggett & Meyers, Inc. v. Bloomfield, 380 F.Supp. 1044, 1047 (S.D.N.Y.1974) (waiver where third-party defendant answered and counterclaimed without asserting right to arbitrate and actively participated in pretrial discovery for ten months); see also Miller Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497 (5th Cir.1986) ("Substantially invoking the litigation machinery qualifies as the kind of prejudice ... that is the essence of waiver.") (internal quotation omitted).
 
 
 75
 A determination of prejudice within the meaning of Gavlik relevant to a finding of waiver of the right to arbitrate thus incorporates not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims, see National Foundation for Cancer Research, 821 F.2d at 776; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings, see Price, 791 F.2d at 1161; the extent of its non-merits motion practice; see Van Ness Townhouses, 862 F.2d at 759; its assent to the district court's pretrial orders, see id.; and the extent to which both parties have engaged in discovery. See Gavlik, 526 F.2d at 783. Based on the ample record of prejudice to the plaintiffs here, we conclude that the defendants have waived their right to arbitrate, if any.
 
 III.
 CONCLUSION
 
 76
 For the reasons set forth above, we will affirm the district court's entry of default judgment for the plaintiffs, as well as the orders certifying the class and denying the motion of Blinder, Robinson to arbitrate which merged into that final judgment.
 
 
 
 [1]
 Penny stocks are low-priced, high-risk equity securities for which there is frequently no well-developed trading market
 
 
 [2]
 Prior to 1989, IEI was known as Blinder International Enterprises, Inc
 
 
 [3]
 Every person who ... controls any person liable under [section 12(2) of the Securities Act of 1933] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist
 15 U.S.C. § 77o (1988).
 
 
 [4]
 Every person who ... controls any person liable under any provision, rule, or regulation under this chapter shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action
 15 U.S.C. § 78t(a) (1988).
 
 
 [5]
 A more lengthy discussion of plaintiffs' allegations is set forth in Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 190-93, 200-04 (3d Cir.1990) (Hoxworth I ) (vacating district court's preliminary injunction encumbering defendants' assets and remanding for further proceedings)
 
 
 [6]
 As modified, the class included the following twenty-one equity securities: Abek, Inc.; AllerTech, Inc.; American Strategic Metals, Ltd.; Applied Genetic Ventures, Inc.; Blinder International Enterprises, Inc. (named changed to IEI); Compagnie Equities Ltd.; CompuSonics Corp.; Continental Connector Industries, Inc.; DCX, Inc.; DeRosa Foods, Inc.; Envirosure Management Corp.; Equitex, Inc.; Gateway Communications, Inc.; ISYS Technology, Inc.; Kiwi Ventures Ltd. (named changed to Western International Pizza Corp.); Pierce Ventures, Ltd. (name changed to Telstar Satellite Corp. of America); Prodel, Inc.; ResCon Technology Corp.; Solar Satellite Communication, Inc.; Source Venture Capital, Inc.; and Touchstone Software Corp
 
 
 [7]
 At the time of the discovery requests, Meyer Blinder was under indictment in the United States District Court for the District of Nevada
 
 
 [8]
 Although IEI filed a motion for reconsideration on December 16, 1991, the motion was not served within the ten-day period required under Local Rule 20(g). Therefore, the court never ruled on IEI's motion
 
 
 [9]
 The judgment against IEI is limited to $70,111,812.55 because the corporation was not formed until July 26, 1985
 
 
 [10]
 Although the defendants filed pro se motions to set aside the default judgment, these were never acted on by the district court. Inasmuch as they are not motions enumerated in Fed.R.App.P. 4(a)(4), they do not affect the finality of the judgment before us
 
 
 [11]
 Although the Rule refers only to the clerk's entry of default, it is undisputed that the court may impose a default as a sanction. See Brock v. Unique Racquetball & Health Clubs, 786 F.2d 61 (2d Cir.1986); 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2682, at 411 (2d ed. 1983)
 
 
 [12]
 This was not the first fee dispute between the defendants and their attorneys. As counsel for defendants admitted at oral argument, he had previously withdrawn from representing these parties because his law firm had not been paid
 
 
 [13]
 In Halperin v. Jasper, 723 F.Supp. 1091 (E.D.Pa.1989), the district court, faced with a complaint alleging both securities fraud and civil RICO claims, rejected the argument made by defendants here:
 [D]efendant contends that if plaintiffs' securities claims are barred by the statute of limitations, the RICO is likewise barred, since the alleged § 10(b) and Rule 10(b)(5) violations are the predicate acts upon which the RICO claims are based.... [T]here does not appear to be any authority for the proposition that predicate acts which are cognizable independent claims, substantively, but which are barred by the statute of limitations, cannot serve as predicate acts for a RICO claim.
 Id. at 1096-97.
 
 
 [14]
 The district court rejected Blinder, Robinson's motion to compel arbitration in a summary order dated March 6, 1989. A renewed motion to compel arbitration was thereafter filed on May 19, 1989. The district court did not rule on that motion. For purposes of appeal, we deem that that renewed motion was also denied