Thomas SCHWARTZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

DANA CORPORATION/PARISH DIVISION, Defendant.

No. CIV.A. 00–CV–2264.

United States District Court, E.D. Pennsylvania.

Aug. 8, 2000.

Simon Grill, Rick Long, Kozloff Stoudt, Reading, PA, for Thomas F. Schwartz.

Scott F. Cooper, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, for Dana Corporation.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiff Thomas Schwartz ("Plaintiff") brings this proposed class action against Dana Corporation/ Parish Division ("Defendant"). Plaintiff alleges violations of Pennsylvania's Wire Tapping and Electronic Surveillance Control Act ("Wiretap Act")[1] arising from Defendant's alleged electronic surveillance of oral communications by individuals at Dana Corporation/ Parish Division for approximately one week. Currently before the court is Plaintiff's Motion for Class Certification ("Pl.'s Mot. for Class Cert.") by which he seeks to establish himself as the representative of the proposed class. The Court also has before it Defendant's Motion in Opposition to Plaintiff's Motion ("Def.'s Opp.").

### I. BACKGROUND

Plaintiff's counsel is seeking class certification in a similar action against Dana Corporation, also involving alleged incidents of Wiretap Act violations.[2] Our concurrent opinion in that case, *Kline v. Security Guards, Inc.*, 196 F.R.D. 261 (E.D.Pa.2000) (Van Antwerpen, J.), thus provides much of the factual and legal analysis for our conclusions in the instant matter.

This action seeks damages from Dana Corporation/ Parish Division ("Dana") for allegedly intercepting, unlawfully, oral communications for approximately one week via electronic surveillance. These allegedly intercepted communications were made by Dana employees. Following are material facts alleged by Plaintiff.

Dana Corporation's Parish Division makes motor vehicle frames, including truck frames. Pl.'s Mot. for Class Cert. at 2. Workers are frequently injured in the course of normal duties and are unable to perform their normal job assignments. *Id.* Dana had a program that required all injured workers to report to Room 235; after signing in, some were assigned to light duty for the day and left Room 235. *Id.* Those remaining were required to stay there for the length of their shifts. *Id.* at 3.

According to Plaintiff, Dana installed a concealed camcorder with a microphone in Room 235 to intercept and record audio conversations of injured workers in April 1994.[3] Pl.'s Compl. at ¶ 6. At some point, the concealed camcorder was discovered by one or more injured workers and the surveillance ceased; Plaintiff estimates that the alleged electronic audio surveillance lasted for less than 10 days. Pl.'s Mot. for Class Cert. at 7. Plaintiff believes that up to 100 people had their conversations intercepted by Defendant during that time period. Pl.'s Compl. at ¶ 32. At least one tape from the camcorder was played by a management executive at Dana. *Id.* at ¶ 16.

Plaintiff proposes a class of "[a]ll persons whose conversations were intercepted or were attempted to be intercepted by electronic surveillance equipment in Room 235 at Dana Corporation's Parish Division on or about the first week of April 1994." Pl.'s Mot. for Class Cert. at 2. Plaintiff asserts that he is an adequate representative of the potential class and that his claims and defenses are typical of the claims and defenses of the other members of the proposed class. Pl.'s Compl. at ¶¶ 35–36.

### II. DISCUSSION

■ Class actions are governed by Federal Rule of Civil Procedure 23. A plaintiff seeking class certification "must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994); *see* FED. R. CIV. P. 23. Rule 23(a) provides that:

---

1. 18 PA. CONS. STAT. ANN. § 5725(a)

2. The first alleged incidence took place in April 1994, the second occurred from October to December 1998.

3. Dana denies any improper surveillance. Def.'s Reply at ¶ 6.

One or more members of a class may sue... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims... of the representative parties are typical of the claims... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

Plaintiff has moved for certification pursuant to Rule 23(b)(3). Rule 23(b)(3) is satisfied if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ Plaintiff bears the burden of proving that all of the requirements for certification have been met. *See, e.g., Amchem Products v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). District courts must undertake a "rigorous analysis" to ensure that the putative class and its proposed representative satisfy each of the prerequisites to class certification. *See Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). *Baby Neal,* 43 F.3d at 55; *Sanneman v. Chrysler Corp.,* 191 F.R.D. 441, 445 (E.D.Pa.2000). Moreover, the court has broad discretion in determining whether a particular action complies with Rule 23. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

For the reasons that follow, Plaintiff's motion for class certification is denied.

**A. Rule 23(a)**

*1. Numerosity*

■ Under Rule 23(a), a party seeking class certification must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Courts have clarified this by holding that " 'impracticable does not mean impossible.' " *Gantz v. White,* No. CIV.A.89–5096, 1989 WL 119116, at *1 (E.D.Pa. Oct.6, 1989) (quoting 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §§ 1762, at 159 (1986)). Furthermore, the exact number of class members need not be known for certification to be proper. *See Hurt v. Philadelphia Hous. Auth.,* 151 F.R.D. 555, 559 (E.D.Pa.1993) (citing *Nat'l Ass'n of Radiation Survivors v. Walters,* 111 F.R.D. 595 (N.D.Cal.1986)).

■ Plaintiff estimates that approximately 100 people reported to Room 235 during the relevant time period based on the three shifts employed by Dana in April 1994. Pl.'s Mot. for Class Cert. at 9. Defendant maintains that Plaintiff has not offered any evidence aside from mere speculation that the proposed class is so numerous as to make joinder impracticable, and therefore has not met his burden. Def.'s Opp. at 15 n. 6.

Rule 23(a)(1) does not require any particular number, so long as a good faith estimate of the number of class members is provided. *See In re Life USA Holding, Inc.,* 190 F.R.D. 359, 364 (E.D.Pa.2000). We have no reason to question the good faith estimate of approximately 100 people provided by Plaintiff, particularly since the numerosity requirement is consistently liberally construed. We find that Plaintiff has satisfied Rule 23(a)(1).

*2. Commonality*

■ The commonality requirement of Rule 23(a) requires that there exist questions of law or fact common to the members of the proposed class. Commonality exists when proposed class members challenge the same conduct of the defendants. *See, e.g., Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal,* 43 F.3d at 56; *see also Alliance to End Repression,* 565 F.2d 975; *Yeager's Fuel v. Pennsylvania Power & Light Co.,* 162 F.R.D. 482, 486 (E.D.Pa.1995).

▪ In the instant case, Plaintiff has identified a number of issues he feels are common to both him and the putative class.[4] Certainly there are some questions in common between the Plaintiff and the proposed class, such as: whether Defendant has engaged or procured others to engage in audio surveillance of the proposed class and, if so, for what duration; and the physical layout of Room 235.

Given the low threshold for this requirement, we conclude that Plaintiff shares at least one question of law or fact with the prospective class, and therefore he has satisfied the commonality requirement of 23(a)(2).

### 3. The "Typicality" Requirement

▪ Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the proposed class. FED. R. CIV. P. 23(a)(3). This requirement "effectively 'limits the class claims to those fairly encompassed by the named plaintiff's claims.'" *General Telephone Co. of Southwest*, 457 U.S. at 156, 102 S.Ct. 2364 (*quoting General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). Unlike the numerosity and commonality requirements, which evaluate the sufficiency of the class itself, the typicality requirement assesses the sufficiency of the named plaintiffs. *See Baby Neal*, 43 F.3d at 56.

The Third Circuit recently outlined the criteria a plaintiff must prove to satisfy 23(a)(3). The court concluded that "the typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interest will be fairly represented." *Baby Neal*, 43 F.3d at 57. Essentially, the named plaintiff's claims must be typical, "in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Id.* at 55. This requirement "preclude[s] certification of those cases where the legal theories of the named plaintiff potentially conflict with those of the absentees." *Id.*

▪ The typicality requirement may be met despite the existence of factual distinctions between the claims of the named plaintiffs and the claims of the proposed class. *Id.* at 58; *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985). Rather, a court's inquiry must involve "whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Baby Neal* at 57–58 (*citing Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir.1988)). If "the class representatives ... present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented," then 23(a)(3) is satisfied. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992) (citation omitted). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58 (internal quotation and citations omitted).

▪ We agree with Plaintiff that his claims are based on the same legal theories

---

**4.** Plaintiff identified fifteen questions he finds to be common to both him and the proposed class. They are: (1) whether Dana procured another person or persons to intercept Plaintiff's and other proposed class members during the period in question; (2) whether Dana attempted to intercept the putative class members' conversations; (3) whether Dana intercepted the putative class members' conversations; (4) when was the electronic surveillance equipment installed; (5) how many days did the electronic equipment intercept conversations; (6) when did the electronic surveillance first occur in Room 235; (7) when did the electronic surveillance cease in Room 235; (8) who purchased the electronic surveil- lance equipment; (9) who purchased the tapes that were used to record the intercepted conversations; (10) who installed the electronic equipment; (11) who activated the electronic equipment; (12) whether Dana has committed prior or subsequent violations of the Wiretap Act; (13) whether Dana had a program to intercept the putative class members' conversations; (14) was there a court order authorizing Dana to intercept, disclose or use the conversations of the putative class; (15) was an expectation of non-interception justifiable or reasonable under the circumstances. Pl.'s. Mot. for Class Cert. at 16–17. We do not necessarily agree that all of the preceding are individual questions in this case.

as those of the proposed class: violation of the Wiretap Act and unlawful procuring of other to intercept, disclose and use the contents of oral communications. Pl.'s Mot. for Class Cert. at 2. In addition, Plaintiff does share factual elements with members of the putative class, since the alleged electronic surveillance all took place in the same physical location using the exact same method.

Particularly as Defendant has not disputed Plaintiff's ability to satisfy the typicality requirement, we find Plaintiff has met his burden of establishing that his interests align with those of the absent proposed class members. Since the legal theories are identical, we find that Plaintiff has satisfied Rule 23(a)(3).

### 4. Adequacy of Representation

 Another class certification prerequisite is that the plaintiff "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Third Circuit has stated that this inquiry should determine whether the putative plaintiff "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine*, 846 F.2d at 179 (citations omitted); *see also Hoxworth*, 980 F.2d at 923 ("the plaintiff must not have interests antagonistic to those of the class"). The Supreme Court has repeatedly held that such persons "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). A named plaintiff cannot be an adequate class representative where he or she "has different claims and/or circumstances than other members, thereby creating the possibility of a less than vigorous advancement of the case for all plaintiffs involved." *Reilly v. Gould, Inc.*, 965 F.Supp. 588, 600 (M.D.Pa.1997).

In the instant case, Plaintiff seeks the same remedy that other potential class members would seek. Plaintiff appears to have no interests antagonistic to the class. Pl.'s Mot. for Class Cert. at 14. Defendant does not dispute the adequacy of Plaintiff at this time. Def.'s Opp. at 22.

However, we have some misgivings about the named Plaintiff's ability to represent the class. Because of the individualized nature of the proof required to establish a violation of the Wiretap Act,[5] his claims are based on circumstances not applicable to all proposed class members. Incentive may therefore be lacking to vigorously pursue the case for all proposed class members. Yet, as there is no apparent lack of intent by Plaintiff at this time to vigorously pursue the case for the rest of the putative class we find he has satisfied Rule 23(a)(4).

 Rule 23(a)(4) requires that "the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Hoxworth*, 980 F.2d at 923 (citations omitted); *see also Hassine* at 179. This requirement is meant to ensure appropriate representation of absent class members who will be bound by the judgment. *See Landy v. Amsterdam*, 96 F.R.D. 19 (E.D.Pa.1982). Defendant has not challenged the adequacy of counsel, reserving the right to do so at a later date. Def.'s Opp. at 22. In addition, Plaintiff's counsel avers that they are "experienced attorneys." Pl.'s Mot. for Class Cert. at 14. We find that there is currently no reason to question the ability of plaintiff's counsel to litigate this matter and find them adequate.

### C. 23(b)

In addition to satisfying the 23(a) requirements, a putative class must comply with at least one of the sub-parts of Rule 23(b). *See Baby Neal v. Casey*, 43 F.3d 48, 55–56 (3d Cir.1994). Rule 23(b)(3) requires that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudica-

---

5. *See infra* pp. 282–83.

tion of the controversy." FED. R. CIV. P. 23(b)(3).

■ Satisfaction of the 23(a) commonality requirement, or any of the Rule 23(a) requirements, is not an indication that 23(b)(3) is likewise satisfied. *See, e.g., Amchem Products v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (the predominance inquiry is "far more demanding" than the commonality requirement of Rule 23(a), as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"); *Yeager's Fuel, Inc.*, 162 F.R.D. at 486 ("finding that... joinder is impracticable" is not inconsistent with a finding that plaintiff "failed to demonstrate [superiority]"; this assertion "would effectively vitiate any meaningful distinction between the numerosity requirement and the superiority requirement"). After thorough review, we conclude that common issues do not predominate over individual issues in this case and that certifying the proposed class would not, as required, further economies of time, effort, and expense, or be otherwise superior to other methods of adjudication.

*1. Predominance*

■ A class action may be certified under Rule 23(b)(3) only if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED.R. CIV. P. 23(b)(3). Of course, the required predominance of common issues does not mean that individual issues must be non-existent; class members need not be identically situated as to all issues, so long as their claims are not in conflict with each other. Any individual differences, however, must be of lesser overall significance than the common issues, and they must be manageable in a single class action. *See Chin v. Chrysler Corp.*, 182

F.R.D. 448, 453 (D.N.J.1998) (citations omitted).

■ We conclude that because each member must prove liability and damages, individual issues will predominate over common issues of the litigation. Under Pennsylvania law, which we will assume for the purposes of this motion to govern, "interception of a person's communication is not unlawful under the Wiretap Act unless the communication is an 'Oral Communication'", as that term is defined by the Act.[6] Def.'s Opp. at 7–8. To resolve the liability issue alone will require a plethora of individual inquires. For instance, proof of Wiretap Act violation requires that a plaintiff demonstrate: "(1) that he engaged in an oral communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519, 522 (1998). "Interception" is defined by the Wiretap Act as: "[a]ural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." 18 PA. CONS. STAT. ANN. § 5702.

The "proper inquiries" for determining what constitutes an oral communication under the Wiretap Act are "whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances." *Id.* at 523. In determining whether an expectation of non-interception was justified, courts must employ those principles applicable to the right to privacy, as there can be no expectation of non-interception absent a reasonable expectation of privacy.[7] *Id.*

6. 18 PA. CONS. STAT. ANN. § 5702 provides in relevant part: "'Oral Communication.' Any oral communications uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation."

7. Plaintiff relies on *Commonwealth v. McIvor*, in which the Pennsylvania Superior Court held that automobile drivers' statements to a state police officer were "oral communications" under the

Wiretap Act despite that each driver testified to a lack of an expectation of privacy. *Commonwealth v. McIvor*, 448 Pa.Super. 98, 670 A.2d 697, 698, 703–04 (1996) (en banc). However, Plaintiff's reliance is misplaced, as the Pennsylvania Supreme Court clearly stated after *McIvor* that "it is not possible to have an expectation of non-interception absent an expectation of privacy." *Agnew*, 717 A.2d 519, 523. The *Agnew* decision's interpretation of the Wiretap Act is controlling.

Hence, courts should examine first whether the plaintiff exhibited an expectation of privacy, and second whether this expectation is reasonable from society's standpoint. *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81, 87 (1988), *aff'd on other grounds sub nom., Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Therefore, "a conversation amounts to a protected 'oral communication' under the Wiretap Act only where the speaker possessed a reasonable expectation of privacy in the conversation." *Agnew*, 717 A.2d at 523. The reasonableness standard is objective, not subjective. *Id.*

The Pennsylvania Supreme Court's decision in *Agnew* makes clear that we would need to analyze the circumstances surrounding a prospective class member's presence in Room 235 to determine if he or she had an objectively reasonable expectation of privacy. Only then could we find that his or her conversations were protected "oral communications" under the Wiretap Act.

 Plaintiff argues that an examination of the surrounding circumstances, which are identical for all who reported to Room 235, will allow this court to infer an objectively reasonable expectation of non-interception for each person who engaged in a conversation there. Pl.'s Mot. for Class Cert. at 26. However, Plaintiff has misconstrued the relevant standard. The standard for determining a justifiable expectation of non-interception is whether the speaker had a justifiable expectation of privacy, not whether the speaker had a justifiable expectation that his or her words would not be seized electronically. *Agnew*, 717 A.2d at 521–22. Outside of certain commonalities, such as the size and layout of the Room 235, individual factors impact an objective expectation of privacy. As we stated above, we would need to determine for each class member whether he or she had exhibited an expectation of privacy; and, in addition, whether this expectation was objectively reasonable.

These factors are likely to be markedly different for members of the putative class.

For instance, a class member who had a conversation while other injured workers were nearby in Room 235 would not have nearly the objective expectation of privacy as would a member who was alone in the room and quietly conversing on a wireless phone. The multitude of individual inquiries to determine liability is inapposite to the expected efficiencies of a class action.

Plaintiff intimates that by merely being in Room 235 during the relevant time period, class members would have been subjected to attempted interception via the alleged continuous electronic audio surveillance.[8] Pl.'s Mot. for Class Cert. at 18 n. 7. However, attempted interception is not sufficient to establish liability under the Wiretap Act, as the Pennsylvania Supreme Court made clear in *Agnew*. Again, the class member must also have exhibited an objectively reasonable expectation of privacy, determined according to the circumstances surrounding the communication.

Although certain factual issues in this case may be proven on a common basis, possibly many more require individual examination. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791; *Sanneman*, 191 F.R.D. at 449. Furthermore, the need to establish liability and damages with respect to each class member would require a detailed factual inquiry to establish the circumstances and surroundings of each class member. This would place a strain on the resources of this Court and defeats the expected efficiencies of proceeding as a class. We will not certify a class that will result in a laborious administrative process, where individual threshold questions will overshadow common issues regarding Defendant's alleged conduct. Accordingly, we conclude that Plaintiff has not adequately shown that common issues predominate over individual issues.

The court in *Forman v. Data Transfer* faced a situation analogous to the case before us; their approach is applicable here. In *For-*

---

**8.** Plaintiff proposes to identify the people who were in Room 235 during the relevant time period through Dana's sign-in sheets for the injured

employees and the alleged videotapes. Pl.'s Mot. for Class Cert. at 5.

*man,* the defendant allegedly sent unsolicited facsimile advertisements to plaintiff and others that plaintiff wanted to represent as a class. *Forman,* 164 F.R.D. at 402. The essence of plaintiff's complaint was that defendant had violated the Telephone Consumer Protection Act of 1991.[9] *Id.* Plaintiff sought to certify a class comprising people and businesses that had received the unsolicited facsimiles starting on a particular date. *Id.* The court refused, noting that:

> In determining whether common questions of law and fact predominate, the focus of the inquiry is directed primarily toward the issue of liability. The gravamen of plaintiff's complaint is not a common course of conduct by the defendant, but rather a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute. Lacking a single set of operative facts, it is difficult to see how common questions... predominate.

*Id.* at 404.

Like the plaintiff in *Forman,* Plaintiff in this case maintains that Defendant engaged in a common course of conduct in violating the Wiretap Act. Plaintiff asserts that the alleged constant audio surveillance is a common question to all, as are questions relating to whether Defendant procured others to intercept, use or disclose oral communications. However, the complaint is based upon allegations of individual violations, each of which turns on individual circumstances. Without an objectively reasonable expectation of privacy, conversations made by a particular class member will not be protected oral communications under the Act.

Furthermore, the Wiretap Act calls for a minimum $1000 recovery, or $100 for each day the Act was violated if the total is more than $1000.[10] Assuming at least one violation, we would need to determine how many days Defendant violated the Wiretap Act for each class member to calculate statutory damages. Possible punitive damages would also necessitate individual inquiries. Of course, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Holmes v. Pension Plan of Bethlehem Steel Corp.,* 213 F.3d 124, 137 (3rd Cir.2000) (citations omitted). However, because common issues on liability do not predominate, the necessity of an individual calculation of damages is yet another factor which militates against granting class certification.

To establish liability in the case sub judice, we would need to consider the relevant facts and circumstances surrounding each putative class member for each alleged oral communication that took place in Room 235 during the first week of April 1994. It is clear that whatever common peripheral issues that exist are dwarfed by the individual inquiries necessary to establish liability.

In a case where no one set of operative facts establishes liability and where individual issues outnumber common issues, the district court should question the appropriateness of a class action for resolving the controversy. As our above discussion makes clear, numerous individual issues present an impediment to proceeding as a class action, and offset the potential benefits of such an action. When individual rather than common issues predominate, "the economy and efficiency intended by class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." 7A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 (1986). On this issue of predominance alone, we would deny Plaintiff's Motion for Class Certification.

*2. Superiority*

Rule 23(b)(3) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* The Rule lists several factors pertinent to this question:

---

**9.** 47 U.S.C. § 227(b)(1)(C). This statute prohibits, inter alia, using a facsimile machine to send an unsolicited advertisement to another facsimile machine.

**10.** *See* 18 Pa. Cons. Stat. Ann. § 5725(a)(1).

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3).

■ A finding of predominance is not an indication that the superiority requirement will be satisfied; however, frequently a finding that individual issues do not predominate is accompanied by a finding that a class action is not superior. *See In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 224 (E.D.La. 1998) (*citing Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n. 19 (5th Cir.1996)); *see also* FED. R. CIV. P. 23(b)(3), Advisory Note. We conclude that even if the Plaintiff could have satisfied the predominance requirement, his class certification motion would fail the superiority requirement.

■ To find superiority, a court must find all other methods of resolving the issues in a case to be inferior to a class action. Plaintiff acknowledges that his attorneys could recover fees and costs in a successful Wiretap Act claim, yet argues that because there is no guarantee of success there is little incentive for an individual plaintiff to pursue litigation under the Act. Pl.'s Mot. for Class Cert. at 23–24. However, the very purpose of a fee-shifting statute such as the one at issue here is to provide incentive to counsel to pursue otherwise unprofitable litigation. 18 PA. CONS. STAT. ANN. § 5725(a)(3); *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir.1996). Plaintiff further concedes that punitive damages are available when a successful claim is made under the Wiretap Act, providing an incentive for individual plaintiffs to pursue claims that might otherwise be neglected. The ability to recover attorneys' fees or punitive damages belies the projected problems of a negative value suit, and offsets the potential costs associated with individual litigations for relatively small financial amounts. *See, e.g., Arch v. Am. Tobacco Co.*

175 F.R.D. 469, 496 (E.D.Pa.1997). Additionally, it is a non sequitur to state that no guarantee of success means that an individual has little incentive to pursue litigation under the Wiretap Act, since Plaintiff is no more likely to prevail in a class action at trial than he would be in individually-joined litigation.

Finally, we note the finding of some courts that a class action is not superior when it would result in relatively small recoveries for individual class members while either exposing defendants to large administrative costs or consuming judicial resources, on top of the necessary abundance of court time for supervision. *See Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378 (N.D.Ga.1979); *John Does 1–100 v. Boyd*, 613 F.Supp. 1514 (D.Minn. 1985).

We conclude that the economy to be achieved by class treatment of the issues is more than counterbalanced by the numerous issues relevant only to a particular class member. The few issues that might be tried on a class basis in this case, balanced against those that must be approached individually, establish that the time saved by the class action procedure would likely be relatively insignificant.

In sum, a 23(b)(3) class action in this case would be unwieldy and run counter to the expected benefits of a class action. A trial would require resolution of numerous factual and legal issues. The decision to deny certification in this case is consistent with our reasoning in *Kline*, a case presenting similar legal issues. Because Plaintiff has been unable to demonstrate the superiority of a class action, we decline to certify the proposed class.

## III. CONCLUSION

Plaintiff has failed to satisfy the requirements of Federal Rule of Civil Procedure 23, because common issues do not predominate over the individual issues raised by this litigation, and because a class action would not be a superior mechanism for adjudicating the claims at issue. The administrative burdens that would present themselves render the proposed class action infeasible.

For the foregoing reasons, we deny Plaintiff's Motion for Class Certification.

## ORDER

AND NOW, this 8th day of August, 2000, upon consideration of Plaintiff's Motion for Class Certification, filed June 26, 2000, and Defendant's Opposition to Plaintiffs' Motion for Class Certification, filed July 11, 2000; it is hereby ORDERED as follows:

1. Plaintiff's Motion for Class Certification is DENIED.