Fred A. JORDAN

v.

**COMMONWEALTH FINANCIAL SYSTEMS, INC. et al.**

**No. 2:05 CV 05789 LDD.**

United States District Court, E.D. Pennsylvania.

July 25, 2006.

James A. Francis, Mark D. Mailman, John Soumilas, Francis & Mailman, P.C., David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiff.

Jeffrey C. Turner, Esquire, Surdyk, Dowd & Turner Co., L.P.A., Dayton, OH, Richard J. Perr, Esquire, Fineman, Krekstein & Harris, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION

DAVIS, District Judge.

Presently before the Court are plaintiff's motion for class certification (Doc. No. 7), defendants' brief in opposition (Doc. No. 20),

and plaintiff's reply thereto (Doc. No. 21). For the following reasons, this Court grants plaintiff's motion.

## I.  Factual and Procedural History

Plaintiff Fred Jordan ("plaintiff") seeks class certification for claims brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Cons.Stat. Ann. § 2270.1 *et seq.*. (*See* Pl. Br., at 1). Plaintiff alleges that defendant Commonwealth Financial Systems ("CFS"), a debt collection corporation, and defendant Patricia Cobb ("Cobb"), the executive vice-president of CFS and a licensed attorney, committed a series of FDCPA violations in connection with the distribution of standardized debt collection letters to plaintiff and other members of the putative classes to collect non-business debts.

### A.  PORT One Letters

A PORT One letter is the first standardized, computer-generated letter that CFS sends to a debtor after an account has been uploaded into CFS' computer system. (*See* Cobb Dep., attached as Ex. A to Def. Br., at 52–54). CFS generates and mails several thousand PORT One letters to debtors each year. (*Id.*, at 54).

Plaintiff received PORT One letters on April 1, 2004 and September 20, 2004. (*Id.*; see April 1, 2004 Letter and September 20, 2004 Letter, attached as Ex. A and E to Pl. Compl). The April 1, 2004 letter demanded that plaintiff pay CFS the amount of $1,784.40 on an overdue credit card account with Providian ("first Providian account"), and informed plaintiff that the debt "will" be referred to an attorney for "legal consideration" within 35 days from the date of the letter if no payment or payment arrangement is made. (*See* April 1, 2004 Letter). The September 20, 2004 letter, the content of which virtually duplicates that of the April 1, 2004 letter, threatened the referral of the debt from a second overdue Providian account ("second Providian account") for legal action unless plaintiff either paid CFS the amount of the debt ($8,435.24) or made pay-

ment arrangements within 35 days. (*See* September 20, 2004 Letter). After receiving the April 1, 2004 and September 20, 2004 PORT One letters, plaintiff disputed and requested verification of the amount of the credit card debt. (*See* Compl., at ¶¶ 14, 16, 21; April 28, 2004 Dispute Letter, attached as Ex. B to Pl. Compl.; May 27, 2004 Dispute Letter, attached as Ex. D to Pl. Compl.; October 20, 2004 Dispute Letter, attached as Ex. G to Pl. Compl.).

Despite the representation in the PORT One letter that, in the absence of a response, CFS "will refer this matter to an attorney ... for legal consideration" within thirty-five days, CFS' computer system is pre-programmed to generate and send a second standardized letter, the 2 UNI letter, forty-five days after the mailing of the PORT One letter, if the debtor does not respond to the PORT One letter. (*See* Cobb Dep., at 63–64). Plaintiff received a 2UNI letter, dated May 14, 2004, concerning the first Providian account. (*See* May 14, 2004 Letter, attached as Ex. C to Pl. Compl). This letter, captioned "Final Notice Before Suit," stated that although it appears "immediate legal action" is the only available recourse, CFS would hold plaintiff's file for ten days to await communication of plaintiff's repayment intentions. (*Id.*).

Plaintiff alleges that the April 1, 2004 and September 20, 2004 PORT One letters violated the FDCPA in the following ways: (a) using the phrase "Commonwealth Financial Systems" to coerce unsophisticated consumers into believing that CFS was affiliated with the Pennsylvania government; (b) falsely suggesting that the Commonwealth of Pennsylvania or one of its agencies approved the letters; (c) falsely representing that if payment is not remitted or an agreement reached within 35 days, the matter will be referred to an attorney for legal consideration; and (d) creating a false sense of urgency. (*See* Compl., at ¶¶ 56–57; Pl. Reply Br., at 7–8).

### C.  November 24, 2004 Letter

Plaintiff received his first correspondence from Cobb in November 2004. Through a November 24, 2004 letter, Cobb advised

plaintiff that his first Providian account had been referred to her "office for legal action." (*See* November 24, 2004 Letter, attached as Ex. H to Pl. Compl.). The November 24, 2004 letter threatened that if payment was not received nor arrangements made with CFS, Cobb's "client," within ten days from the date of the letter, "further action would be taken to collect the debt." (*Id.*). The letterhead identified Cobb as an attorney with an address and telephone number in Scranton, Pennsylvania, but never identified Cobb as an employee of CFS. (*Id.*). The letter also failed to indicate expressly that CFS shared Cobb's address and telephone number. (*Id.*).

Plaintiff alleges that the November 24, 2004 letter violated the FDCPA in the following ways: (a) threatening to take action without an intent to do so; (b) creating a false sense of urgency; (c) creating the false belief that someone other than the creditor was participating in the collection of plaintiff's debt; (d) creating a false belief that plaintiff's debt had been referred to an independent law firm and lawyer, who were participating in the collection of the debt; and (e) failing to provide a validation notice to plaintiff in the debt collector's initial communication or within five days of that communication.[1] (*See* Compl., at ¶¶ 56–57; Pl. Reply Br., at 10–11).

### D.   AA3 Letter

An AA3 letter is the final standardized letter that CFS sends to a debtor before the debt is referred for suit. (*See* Cobb Dep., at 96–97). Plaintiff received an AA3 letter, dated July 7, 2005, from CFS concerning the first Providian account. (*See* July 7, 2005 Letter, attached as Ex. I to Pl. Compl.). The July 7, 2005 letter stated that if payments were not made within five days from the date of the letter, "legal action will be commenced

to seek judgment and satisfaction of the debt." (*Id.*). Cobb admitted during her deposition that despite the threat of imminent legal action, additional letters in the form of a "5 day letter" or a "10 day letter" are sent to debtors prior to filing suit. (*See* Cobb Dep., at 75, 98, 117–118). Cobb further admitted that several hundred AA3 letters are mailed out per year. (*Id.*, at 99).

Plaintiff contends that the July 7, 2005 AA3 letter violates the FDCPA for the following reasons: (a) the use of the term "Commonwealth Financial Systems" in bold print gives the false impression that CFS is affiliated with the Pennsylvania government; (b) falsely representing that an agency of the Pennsylvania government approved the letter; (c) falsely threatening to take legal action within five days of the date of the letter; (d) creating a false sense of urgency; and (e) creating the false belief that a person other than CFS, such as an independent lawyer, is participating in the collection of the debt. (*See* Compl., at ¶¶ 56–57; Pl. Reply Br., at 8–10).

### E.   5–Day Letter

A five-day letter is a letter sent to a debtor from an attorney, who is reviewing the debt's history for suit, that threatens legal action within five days. (*See* Cobb. Dep., at 39–48). Plaintiff received a five-day letter, dated July 28, 2005, concerning both the first and second Providian accounts. (*See* July 28, 2005 Letter, attached as Ex. J to Pl. Br.). The text of the letter was virtually identical to that in the July 7, 2005 letter. (*Id.*). However, the July 28, 2005 letter was sent by Cobb, with the letterhead identifying her as an attorney with an office and phone number in Scranton, Pennsylvania, similar to the letterhead of the November 24, 2004 letter. (*Id.*). Cobb's relationship with CFS is not

---

**1.** Plaintiff interprets § 1692g(a) as requiring each separate debt collector on each debt to provide validation notice. *See* 15 U.S.C. § 1692g(a) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written [validation] notice ...."); *Turner v.*

*Shenandoah Legal Group, P.C.,* 2006 WL 1685698, at *9–11 (E.D. Vir. June 12, 2006) (discussing various interpretations of § 1692g(a)). Thus, according to one of plaintiff's theories of FDCPA liability, either Cobb was a separate debt collector, and failed to provide the requisite validation notice in accordance with § 1692g(a), or Cobb was not a separate collection law firm, thereby violating § 1692j(a). (*See* Pl. Reply Br., at 11).

mentioned in the letter. (*Id.*). Defendants generate and mail approximately five to ten "5 Day" or "10 Day" letters per week under Cobb's signature. (*See* Cobb Dep., at 40–41).

Plaintiff alleges the same violations concerning the July 28, 2005 letter as he alleges with respect to the July 7, 2005 letter. (*See* Pl. Reply Br., at 8–10).

### F. Complaint

On November 2, 2005, plaintiff filed a complaint on behalf of himself and similarly situated consumers within the Commonwealth of Pennsylvania against defendants for violations of the FDCPA and the FCEUA.[2] (*See* Compl., at ¶ 1). On January 31, 2005, plaintiff filed a motion for class certification. (*See* Pl. Mot. For Class Certification, Doc. No. 7). Plaintiff currently proposes the following three classes:

(1) all persons in the Commonwealth of Pennsylvania to whom defendants sent the April 1, 2004 and September 20, 2004 letters, or substantial equivalents, in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service, starting on the two year period prior to the filing of the instant action and through the date of resolution of this case;

(2) all persons in the Commonwealth of Pennsylvania to whom defendants sent the November 24, 2004 letter, or a substantial equivalent, in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service, starting on the two year period prior to the filing of the instant action and continuing through the date of resolution of this case; and/or

**2.** The FCEUA claim is based upon violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons.Stat. Ann. § 201–1, *et seq.* ("UTPCPL").

**3.** Although plaintiff's complaint only included two proposed classes, plaintiff's reply brief requests certification of a third class based upon the November 24, 2004 letter. Defendants offer no specific objection to the expansion of the scope of the proposed class action to three classes. Furthermore, amendment of a class definition at this stage in the litigation is procedur-

(3) all persons in the Commonwealth of Pennsylvania to whom defendants sent the July 7, 2005 and July 28, 2005 letters, or substantial equivalents, in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service, starting on the two year period prior to the filing of the instant action and through the date of resolution of this case.

(*See* Pl. Br. In Support of Class Cert., at 2–3; Reply Br., at 2 n.2).[3]

The Court allowed the parties an opportunity to conduct class certification discovery. Following several extensions of the scheduling order, defendants filed their response in opposition to plaintiff's motion for class certification on June 6, 2006. (*See* Doc. No. 20). Plaintiff replied on July 5, 2006. (*See* Doc. No. 21).

### II. Discussion

Rule 23(a) and Rule 23(b)(3) identify six prerequisites to the certification of a class action: (1) numerosity-the class is so numerous that joinder of all members is impracticable; (2) commonality-the class shares common questions of law or fact; (3) typicality-the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) adequate representation-the representative parties will fairly and adequately protect the interests of the class; (5) predominance—questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (6) superiority-a class action is superior to other available methods for the fail and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23. Plaintiff bears the burden of satisfying each of the

ally appropriate, as the Court retains jurisdiction to modify the class until there is a decision on the merits. *See* Fed.R.Civ.P. 23(c)(1)(C) (Rule 23(c)(1) certification order may be altered or amended before final judgment); *Tenuto v. Transworld Sys., Inc.,* 2000 WL 1470213, at *3 (E.D.Pa. Sept.29, 2000) ("court can modify the class if necessary after the conclusion of discovery"); 2 Newberg on Class Actions § 6:14 (4th ed. 2006) (Rule 23 gives district court "broad discretion to modify the definition of the class even after certification").

prerequisites of class certification. *See Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994); *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D.Pa.2000).

## A. Numerosity

█ Defendants concede that they send out between two hundred and several thousand Port One letters per month, that they send out several hundred AA3 letters per year, and that they send out five to ten "5 Day" or "10 Day" letters per week under Cobb's signature (i.e., several hundred, if not thousand, per year). (*See* Cobb Dep., at 41, 52–54, 96–99, 103). Perhaps based upon the volume of standardized letters that defendants mail to debtors in Pennsylvania, defendants do not challenge the numerosity element of class certification. Accordingly, the Court finds that joinder of all members of the proposed classes is impracticable. *See, e.g., Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 260 (E.D.Pa.2004) (numerosity satisfied in FDCPA class action suit when plaintiffs allege that defendant sent collection letters to thousands of persons and defendant fails to dispute allegation).

## B. Commonality

█ The commonality prong of class certification is not "overbearing." *Bonett v. Education Debt Serv., Inc.*, 2003 WL 21658267, at *1 (E.D.Pa. May 9, 2003). This requirement is satisfied if the "named plaintiffs share *at least* one question of fact or law with the grievances of the prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir.2001). Applying this standard, "courts in this district have previously conferred commonality on debt collection letter class action lawsuits," as these lawsuits hinge upon standardized mailings of illegal form letters to members of the proposed class. *Bonett*, 2003 WL 21658267, at *2; *see also Orloff v. Syndicated Office Systems, Inc.*, 2004 WL 870691, at *3 (E.D.Pa. April 22, 2004).

Plaintiff alleges that standardized debt collection letters were sent to him and hundreds, if not thousands, of similarly situated class members. (*See* Compl., at ¶ 44). Plaintiff further alleges that these standardized debt collection letters violate the FDCPA in numerous ways, including, *inter alia*, by falsely representing that CFS "will" take legal action by a certain date in the absence of a debtor response, by inducing a false sense of urgency, and by creating a false impression that CFS is associated with the Pennsylvania government, that the Pennsylvania government approved the letters, and that Cobb is participating in the collection of debt as an attorney independent of CFS. (*See* Compl., at ¶¶ 56–57). These allegations are sufficient to meet the commonality prong of the class certification standard. *See Orloff*, 2004 WL 870691, at *3 (commonality satisfied when plaintiff claims that defendant sent her debt collection letters that were substantially similar to those sent to the other proposed class members and that those letters violated the same federal and state statutes); *Bonett*, 2003 WL 21658267, at *2 (commonality established when plaintiff alleges that improper standardized debt collection letters sent to plaintiff and other proposed class members); *Saunders v. Berks Credit And Collections, Inc.*, 2002 WL 1497374, at *6 (E.D.Pa. July 11, 2002) (commonality established when substantially similar debt collection letters sent to class and when plaintiff alleges that debt collection letters violate FDCPA).

In reaching this conclusion, the Court rejects defendants' argument that class certification is inappropriate because the unique factual circumstances of plaintiff's claims preclude legal and factual commonality with other members of the proposed classes. (*See* Def. Br., at 3–7).[4] For instance, defendants' argument ignores the flexibility, the low threshold, of the commonality analysis, which requires only "one question of fact or law" to be shared with each proposed class; indeed, factual differences among the claims of the

---

4. Specifically, defendants argue that facts peculiar to plaintiff's claim defeat commonality, such as that CFS purchased plaintiff's second Providian account after sending debt collection notices regarding the first Providian account, including a

"final notice" (i.e., 2 UNI) letter, that plaintiff requested in writing validation of both debts, and that plaintiff established a payment plan and then allegedly refused to abide by conditions of this plan. (*See* Cobb Dep., at 76–77, 89, 90–91).

proposed class members do not defeat commonality, particularly when the outcome of the legal analysis is not heavily influenced by differences in individualized circumstances. *See In re Prudential Ins. Co.,* 148 F.3d 283, 310 (3d Cir.1998); *Baby Neal,* 43 F.3d at 56 (characterizing "commonality" burden as "easily met") Furthermore, defendants' argument, which improperly limits the scope of plaintiff's FDCPA claim to one theory of liability, that defendants' letters created the false impression of imminent legal action in violation of § 1692e(5), is undermined by class certification discovery, which demonstrates the applicability of this theory of liability to all proposed class members; indeed, defendants' potential liability under § 1692e(5) is not based upon plaintiff's individualized circumstances, but, instead, upon defendants' alleged standard practice of mailing additional debt collection letters despite representations in previous letters, such as the PORT One letter and AA3 letter, that CFS will refer the debt to a lawyer or to take legal action within a specific period of time.[5] (*See* Cobb Dep., at 63–64, 97–98). Finally, the Court notes that even if plaintiff's particular factual circumstances somehow render plaintiff's § 1692e(5) theory of liability uncommon to the class, plaintiff raises a series of other FDCPA violations, which, because they are based entirely upon the uniform, non-individualized content of defendants' standardized debt collection letters, are factually and legally common to the proposed classes, such as misleading consumers to believe that CFS is affiliated with the Pennsylvania government in violation of § 1692e(1) and creating the false belief that an attorney independent of CFS is attempting to collect a debt in violation of § 1692j. *See, e.g., Saunders,* 2002 WL 1497374, at *6 ("single common question is sufficient to satisfy this [commonality] requirement").

**C. Typicality**

■ The typicality prong of class certification evaluates whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985) (internal quotations omitted). Additional claims by the class representative do not render his claims atypical of the class; instead, the claim need only arise from the same "practice or course of conduct that gives rise to the claims of the class members" and be "based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 923 (3d Cir. 1992). Furthermore, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal,* 43 F.3d at 58.

Plaintiff was sent the allegedly improper debt collection letters that defendants distributed to the proposed classes. (*See* Compl., at ¶ 43–44). Plaintiff also alleges a theory of liability common to the classes (i.e., FDCPA violations) based upon the content of these debt collection letters. *See Baby Neal,* 43 F.3d at 58 ("cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims"). Accordingly, regardless of whatever minor factual dissimilarities might exist between plaintiff's claims and those of other class members, indeed, regardless of the varying circumstances which prompted (or will prompt) defendants to send the standardized letters to the proposed class members, plaintiff's FDCPA claims clearly remain typical of those of the classes. *See, e.g., Orloff,* 2004 WL 870691, at *4 (typicality satisfied in debt collection class action

---

**5.** For instance, Cobb testified that: (a) a pre-programmed 2 UNI letter, which states that CFS "may assign" the relevant debt to a local attorney to obtain judgment, is mailed to debtors forty-five days after the date of the PORT One letter, despite representations in this letter that CFS "will refer" the matter to an attorney for legal consideration if no response occurs within thirty-five days; and (b) after mailing the standardized AA3 letter, which states that legal action will be commenced within five days if no response is forthcoming, CFS' policy is to engage Cobb to review the account and to send either a "10–day letter" or a "5–day letter." (*See* Cobb Dep., at 63–64, 97–98).

case when plaintiff alleges that other class members received substantially similar standardized debt collection letters and that those letters violated the same federal and state statutes); *Bonett*, 2003 WL 21658267, at *3 (additional claims unique to plaintiff seeking to represent class of consumer debtors based upon mailing of improper standardized debt collection letters do not defeat typicality).

### D. Adequacy of Representation

■ A class representative is adequate if: (a) the class representative's counsel is competent to conduct a class action; and (b) the class representative's interests are not hostile to those of the class. *See, e.g., Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir.2001). Plaintiff's counsel repeatedly has been deemed competent to prosecute class actions based upon FDCPA violations. *See, e.g., Orloff*, 2004 WL 870691, at *4 (finding firm of Francis & Mailman qualified to handle FDCPA class action litigation); *Bonett*, 2003 WL 21658267, at *3 (same). Nor have defendants alleged a legally cognizable conflict of interest to defeat this analysis, as possible factual variations between plaintiff's claims and those of the classes simply do not establish an antagonism between plaintiff's objectives and the objectives of the various classes. *See, e.g., Orloff*, 2004 WL 870691, at *4; *Saunders*, 2002 WL 1497374, at *8.

### E. Predominance

■ Predominance evaluates whether "proposed classes are sufficiently cohesive to warrant adjudication by representation," a test "readily met" in consumer fraud cases. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In the FDCPA context, this standard is satisfied "where the core claims asserted by each Class member all arise out of the same transaction or occurrence-the receipt of debt collection letter(s) from the Defendants," regardless of "minor factual distinctions between each particular

letter." *Bonett*, 2003 WL 21658267, at *4. Accordingly, for the very reasons that established commonality, the predominance element is met.

### F. Superiority

■ Defendant argues that a class action is an inferior method for adjudicating the controversy because members of the proposed classes would enjoy a greater financial recovery through individual actions. (*See* Def. Br., at 9–11). Invoking § 1692k(a)(2)(B), which limits the recovery for plaintiffs in FDCPA class action litigation to their share of the *lesser* of $500,000 or one percent of the "net worth" of the debt collector, defendants argue that the maximum recovery in a class action suit would be $5,200—1% of CFS' net worth of $520,000, as evidenced by CFS' balance sheet. (*Id.; see* CFS' Balance Sheets, attached as Ex. A to Pl. Reply Br.). Thus, according to defendants, it would be financially disadvantageous for the individual class members to proceed pursuant to a class action, with a $5,200 cap on damages, rather than by filing individual damages actions, which, pursuant to § 1692k(a)(1)-(2)(A), could result in actual damages and up to $1,000 in statutory damages. (*Id.*).

In response, plaintiff contends that defendants' prediction concerning a *de minimis* recovery for individual class members in the class action suit is speculative because the exact size of the class has yet to be determined, because net worth should not be derived from a balance sheet alone, and because plaintiff has yet to take extensive discovery on this issue, including on Cobb's net worth. (*See* Pl. Br., at 13–15). In addition, plaintiff argues that even if defendants' methodology for calculating net worth is accurate, the possibility of a *de minimis* financial recovery for the class does not establish the inferiority of class action litigation to individual suits. (*Id.*).

Assuming *arguendo* the validity of CFS' methodology for ascertaining its net worth,[6]

---

**6.** There exists judicial disagreement over how to calculate "net worth" for purposes of § 1692k(a)(B). For instance, some courts define

"net worth" as the defendant's book value, as dictated by the defendant's balance sheet, while at least one court has taken a broader approach,

the Court finds that class action litigation would still be a superior method of resolving the potential FDCPA claims. *See Wisneski,* 227 F.R.D. at 261. First, without a class action, many putative class members would lack the incentive to bring individual suits against defendants, due in part to the small individual losses associated with each potential claim. *See, e.g., Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997) (*"de minimis* recovery ... should not automatically bar a class action, as the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"); *Nichols v. Northland Groups, Inc.,* 2006 WL 897867, at *11 (N.D.Ill. March 31, 2006) (possibility of *de minimis* recovery for potential FDCPA class members does not justify denying class certification when other Rule 23 prerequisites are met, even when individual claims would result in greater reward). This would leave aggrieved parties without redress, which, in turn, would dilute the deterrent effect of the FDCPA on abusive collection practices. *See Nichols,* 2006 WL 897867, at *11 ("class actions serve a deterrent function independent of the amount each class member would recover as damages"). Second, even if most members of the proposed classes filed individual suits in the absence of class action certification, thereby substantially fulfilling the deterrent objective of the FDCPA, this volume of filings would lead to a host of alternative problems, including judicial congestion, the incurrence of excessive litigation expenses, and administrative delays. Third, and most importantly, any concern about the financial detriment to individual class members through class action litigation is sufficiently redressed through the Rule 23 opt-out procedure, which leaves up to each person falling within the class definition the methodological

decision of how to pursue potential claims. *See, e.g., Egge v. Healthspan Serv. Co.,* 208 F.R.D. 265, 272 (D.Minn.2002) (superiority element of Rule 23(b)(3) satisfied despite greater financial reward in pursuing individual action rather than class action pursuant to FDCPA in part because individual members of class who want to pursue individual claims may opt-out). To ensure the opt-out procedure offers informed choice, the Court will direct that Rule 23(c)(2)(B) notice to class members "clearly explain the difference in the size of their recovery should they choose to pursue recovery as part of this class." *Hernandez v. Midland Credit Mgmt., Inc.,* 2006 WL 1793572, at *9 (N.D.Ill. June 27, 2006).

### III. Conclusion

For the following reasons, this Court grants plaintiff's motion for class certification. An appropriate Order follows.

### ORDER

AND NOW, this _____ day of July 2006, upon consideration of plaintiff's motion for class certification (Doc. No. 7), defendants' brief in opposition (Doc. No. 20), and plaintiff's reply thereto (Doc. No. 21), it is hereby ORDERED as follows:

1. Plaintiff's motion (Doc. No. 7) is GRANTED.

2. This action is certified as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).

3. Plaintiff Fred Jordan shall serve as class representative to represent the following classes:

   (1) all persons in the Commonwealth of Pennsylvania to whom defendants sent the April 1, 2004 and September 20, 2004 letters, or substantial equivalents, in an attempt to collect a non-business debt, which letters were not returned as unde-

---

looking beyond the balance sheet to the defendant's fair market net worth, which would include equity, capital stock, and goodwill. *Compare Sanders v. Jackson,* 209 F.3d 998, 1004 (7th Cir.2000) ("net worth" within meaning of § 1692k(a)(B) of FDCPA means "balance sheet or book value net worth," which omits goodwill valuation) *with Wisneski,* 227 F.R.D. at 261 (refusing to accept defendant's balance sheet, which

shows that assets equal liabilities, for purposes of computing "net worth" under § 1692k(a)(B), and, instead, requiring consideration of "equity, capital stock, and goodwill"). Because the Court finds that the class action format would be a superior method of adjudicating the claims of the class even under defendants' methodology for calculating net worth, the Court need enter this dispute.

liverable by the Postal Service, starting on the two year period prior to the filing of the instant action and through the date of resolution of this case;

(2) all persons in the Commonwealth of Pennsylvania to whom defendants sent the November 24, 2004 letter, or a substantial equivalent, in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service, starting on the two year period prior to the filing of the instant action and continuing through the date of resolution of this case; and

(3) all persons in the Commonwealth of Pennsylvania to whom defendants sent the July 7, 2005 and July 28, 2005 letters, or substantial equivalents, in an attempt to collect a non-business debt, which letters were not returned as undeliverable by the Postal Service, starting on the two year period prior to the filing of the instant action and through the date of resolution of this case.

4. The law firms of Francis & Mailman and Donovan Searles, LLC shall serve as counsel for the Classes.